CARL W. MILLER, *Appellee,* v. M. R. JENNESS, *Appellant.*

No. 17,013.

SYLLABUS BY THE COURT.

EVIDENCE — *Opinion* — *Speed of an Automobile.* The rate of speed of an automobile on a public highway is a matter of which the people generally in this country have some knowledge. It is not a matter exclusively of expert knowledge or skill. Where the rate of speed of such a vehicle is material in an action, any person of ordinary ability and means of observation who may have observed the vehicle may give his estimate as to the rate of speed at which it was moving.

Appeal from Dickinson district court. Opinion filed April 8, 1911. Affirmed.

*G. W. Hurd,* and *Arthur Hurd,* for the appellant.

*Z. C. Millikin,* for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action was brought by Carl W. Miller to recover damages resulting from a collision on the public highway between the plaintiff's horse and buggy and the defendant's automobile. The plaintiff, with a driver, was going east about eleven o'clock at night, on a well-traveled public highway, about one mile east of Abilene, and the defendant was going in the opposite direction at the time of the collision.

The abstract of the defendant shows that the jury returned a general verdict in favor of the plaintiff, and also made findings of fact; that the defendant's motion for judgment in his favor thereon and his motion for a new trial were denied. The defendant appeals. He contends that in the following instruction the court assumed as a fact that the defendant by his negligent act placed the plaintiff in a position of danger at the time of the collision. The instruction reads:

"You are instructed that where one is placed in a position of danger by the negligent act of another, which position requires immediate and rapid action, without time to deliberate as to the better course to pursue, [he] is not held to the strict accountability required of one situated under more favorable circumstances, and contributory negligence is not necessarily chargeable to one upon his failure to exercise the greatest prudence or best judgment in such case or under such circumstances. In such cases, where one is placed in a position of danger by the negligent act of another and in the emergency must act suddenly to avoid injury to himself, and in such a situation, if he acts differently from what duty would require him to do when no emergency or dangerous situation existed, in such case and under such circumstances he is not necessarily chargeable with contributory negligence as will defeat a recovery for injuries caused by the negligent act of such other party so placing him in such position of danger. In passing on the question of contributory negligence, under the rule here stated, you should bear in mind the definition of negligence given in rule 7 of these instructions."

The instruction is general in form and it seems apparent that the word "where," being the fifth word in the first sentence and the fourth word in the second sentence of the instruction, was used in the sense of "if," "wherever" or "whenever." It is a common form used in stating a legal proposition as applied to assumed facts, and is a proper statement of the law. We do not think it is probable that the jury would un-

39—84 KAN.

derstand from the instruction that the court asserted or intimated that the defendant, by his negligent act, had placed the plaintiff in a dangerous position, but would understand that the law applicable would be as stated in the instruction, if they found that the defendant by his negligence had placed the plaintiff in such a position. The court properly instructed the jury as to the rights of each party upon the highway, and, in fact, no objection was taken to any of the instructions except as above.

It appears from the evidence and findings of the jury that at the place of the collision the highway was clear and open, about thirty feet in width, but that the beaten track was along a ditch very close to the south line of the highway, and that the plaintiff and his driver were in this beaten track and saw the defendant, in his automobile, approaching rapidly from the east in the same track; that when the conveyances were about eighty feet apart the plaintiff's driver thought the defendant was not going to turn out of the traveled track and turned his horse to the north. About the same time the defendant turned his machine to the north and struck the horse and buggy, seriously injuring both. The jury found that if the plaintiff's driver had remained upon the proper side of the highway— the right-hand side—the collision would not have occurred; but the jury must have found that the defendant was approaching directly toward the plaintiff's conveyance at such speed that the driver had good reason to believe, and did believe, that it was necessary for him to get out of the road to avoid a collision. They also must have found that the defendant, in failing to turn to the right sooner than he did, apparently placed the plaintiff in a dangerous position, and that, while the act of the plaintiff's driver in turning to the left was a mistake, made under an apprehension of immediate danger, the negligence of the defendant was the proximate cause of the injury and the plaintiff

was excused of any negligence under the instruction above quoted.·

Again, it is contended that the court erred in admitting, over the objection of the defendant, the evidence of several witnesses who testified as to the manner in which the automobile was operated and the speed at which it was moving when more than half a mile east of the place of collision. It is contended that the witnesses, not having shown any expert knowledge of the speed of automobiles, were not qualified to estimate the rate of speed at which this one was moving when seen. Probably no person can stand and look at a moving vehicle of any kind and tell the exact rate of speed at which it is moving, but people generally, in this country, are accustomed to seeing moving trains, automobiles, street cars and horse conveyances, and any intelligent person, who has given attention thereto, can give a reasonably accurate estimate of the rate of speed at which any such vehicle is moving when observed by him. The extent of his observation goes to the weight of his testimony; but the matter does not seem to be one of expert knowledge only. (*Himmelwright v. Baker*, 82 Kan. 569.)

True, the rate of speed of the automobile at such a distance away was not very material, but testimony thereof could not have been prejudicial, as it is a matter of common knowledge that the speed of an automobile may be greatly increased or decreased in a short distance. Besides, there was other evidence of the speed immediately before and at the time of the collision. The defendant was in duty bound to see, and is presumed to have seen, that the plaintiff's horse was crossing to the north side of the road, eighty feet in front of his machine. If he was going slowly he undoubtedly could have easily avoided the collision, but the evidence indicates that he struck the horse and buggy with great force.

In addition to the general verdict the jury returned the following special findings of fact:

"(1) Ques. ·How far away was the automobile when the plaintiff and his driver first saw it approaching? Ans. Unable to determine.

"(2) Q. How far were the vehicles apart when the defendant began to turn to his right? A. About eighty feet.

"(3) Q. Did the plaintiff and his driver begin turning to their left at about the same time that the defendant began turning to his right? A. Yes.

"(4) Q. Would the accident have happened if the plaintiff had remained in the beaten track or had turned to his right? A. No.

"(5) Q. Would the accident have happened if the plaintiff's driver had not turned to his left a few seconds before the vehicles came together? A. No.

"(6) Q. If you answer either the fourth or fifth question 'Yes,' then state what was the direct cause of the accident. A. [No answer.]

"(7) Q. How wide was the unobstructed road at the place where the accident occurred? A. About thirty feet.

"(8) Q. At the place where the accident occurred was the beaten track, or part of the road most traveled, near the south side of the road? A. Yes.

"(9) Q. At the time of the accident was the defendant's automobile equipped with a lamp showing a white light which could be seen within a reasonable distance in the direction toward which the automobile was proceeding? A. Yes.

"(10) Q. Was such light burning and so placed as to be free from obstruction to light from other parts of the automobile? A. Yes."

Upon these findings the defendant moved for judgment in his favor. The motion was denied, and error is assigned thereon. It is admitted that the court had correctly instructed the jury as to the rights of the respective parties in the highway, to wit, that the plaintiff and the defendant had equal rights in the use thereof. It is contended that the findings of the jury show conclusively that the accident resulted wholly

Miller v. Jenness.

from the act of the plaintiff in turning to the left, and that it would not have happened if he had remained in the beaten track, it being impossible for him to turn to the right. Unless the plaintiff and his driver were justified by the circumstances in believing that a collision would occur if they did not give the road and turn to the left, the conclusion contended for by the defendant must, of course, follow; but the question was fairly submitted, the jury found in favor of the plaintiff, the court approved the finding, and we are unable to say that it was not supported by some evidence.

The defendant in his motion for a new trial filed an affidavit that the counsel for the plaintiff in his closing argument, among other things, said to the jury:

"Drivers of automobiles must so use and control their machines as to insure the safety of persons and property on the public highway. . . . The law requires that the owners of automobiles must so run their machines as to insure the safety of those traveling on the public highway. . . . He tried to beat his creditors by transferring his property to his wife. The very next day, for the consideration of $1.20, he transferred his automobile and his drug store to his wife."

It appears that the defendant merely excepted to the statements of counsel at the time they were made. If the exception be treated as an objection, he did not ask to have the remarks withdrawn from the consideration of the jury or obtain the ruling of the court as to their propriety. The matter is therefore not properly before this court. We can only take cognizance of and review the rulings of the trial court. (St. L., Ft. S. & W. Rld. Co. v. Irwin, 37 Kan. 701; Kansas City v. McDonald, 60 Kan. 481.)

We find no substantial error in the proceedings, and the judgment is affirmed.