## ANNA M. LORENZEN v. UNITED RAILWAYS COMPANY, Appellant.

**Division One, March 28, 1913.**

1. **NEW TRIAL: Discretion of Trial Court.** Although the discretion of a trial court in granting a new trial is reviewable on appeal, yet that discretion will not be interfered with on appeal unless manifestly abused below.

2. **NEGLIGENCE: Speed of Car: Expert.** Where a teamster, driving a loaded coal wagon, turned it across a street car track at an acute angle with the rails and had got it one-half over the track when it was struck about the middle by an oncoming street car propelled by electricity, and he was killed, and his wife sues for damages, alleging excessive speed in the car, another teamster who had been such for many years on the streets of the city, was familiar with the running of street cars on defendant's tracks and had watched their rate of speed as they passed him while hauling, and who stood hard by the accident and saw everything that happened, is qualified to give an estimate of the rate of speed at which the car was running.

3. ———: ———: **Opinion Not Formed at Moment of Accident.** The testimony of an expert qualified to give an opinion of the rate of speed at which the street car was running cannot be excluded on the ground that he formed no opinion, judgment or estimate instantaneously with the accident.

4. ———: ———: ———: **Metaphysical Distinctions.** To determine the admissibility of evidence by subtle distinctions and refinements, lurking in the convenient shade of psychology and metaphysics, is an experiment of questionable value in the everyday administration of the laws of a practical people.

5. ———: ———: ———: **Opinion on Speed Like Other Expert Evidence.** Opinion evidence on speed of a street car is precisely of the same quality as opinion evidence on time, quantity, number, dimensions, height, distance and the like, and is admissible for the same reason, namely, because, from the nature of the subject under investigation, no better evidence can be obtained or the facts cannot otherwise be presented to the court.

6. ———: ———: ———: ———: **Gathered from Observation.** Opinion evidence gathers efficacy and wisdom by reference to the phenomena of everyday experience and observation. The sources of judgment on the admissibility of such evidence are, therefore, to be looked for in the homely illus-

trations of everyday life. The facts forming the basis of an opinion may have been long observed before the opinion is formed.

7. ————: ————: ————: No Formal Tender: New Trial. The fact that plaintiff made no formal tender of the testimony of the witness after the trial court ruled his opinion of the speed of the car was incompetent, is not a sufficient ground for convicting the trial court of an abuse of its wide and wise discretion in granting to plaintiff a new trial.

8. ————: ————: ————: ————: Excluded on Theory Tender was Made. Where the testimony of the witness as to the speed of the car was excluded as incompetent, and his examination proceeded on the theory on all sides that it would show the car was running at a speed in violation of the ordinance, it is too late on appeal to insist the record does not show the excluded testimony was material.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

AFFIRMED.

*Boyle & Priest* and *T. E. Francis* for appellant.

The trial court erred in granting plaintiff a new trial on the ground error was committed in rejecting evidence offered by plaintiff, because: (1) Witness O'Loughlin was not qualified to give an opinion with respect to the speed of the car. (a) Because he admitted on his *voir dire* examination that his estimate of the speed of the car would be a mere guess and his testimony as a whole conclusively shows that his estimate would be nothing else. McCreery v. Railroad, 221 Mo. 27. (2) Because he testified that he formed no opinion as to the rate of speed of the car and paid no attention to its speed at the time of the collision, and that the first time he formed an opinion concerning that matter was when he was at the office of counsel for plaintiff and being interrogated about the accident, a week or so after it occurred. Mathiesen v. Railroad, 97 N. W. 243. (2) Even though the trial

court were correct in ruling that this witness should have been permitted to testify, it nevertheless erred in sustaining the motion for a new trial on that ground, inasmuch as no offer of proof was made by plaintiff, and hence there was no showing that the testimony, if admitted, would have been relevant or competent and that its exclusion was prejudicial. Jackson v. Hardin, 83 Mo. 187; Berthold v. O'Hara, 121 Mo. 98; Hickman v. Green, 123 Mo. 179; Ruschenberg v. Railroad, 161 Mo. 81; State v. Arnold, 206 Mo. 596; State v. Shapiro, 216 Mo. 371.

*Edward C. Kehr* for respondent.

(1) A trial court must be allowed a wide discretion in the matter of sustaining a motion for new trial and unless it should appear that it had made a mistake in the construction of the law or that its discretion in sustaining the motion had been abused its action in that regard will not be reversed. Roden v. Transit Co., 207 Mo. 392; Seegar v. Silver Co., 193 Mo. 407; Stetzler v. Railroad, 210 Mo. 711; Richter v. Railroad, 145 Mo. App. 1. As to the granting the first new trial, if the action of the court can be upheld upon any ground, the judgment awarding a new trial will be affirmed. Peper v. Peper, 241 Mo. 264; Sliver v. Owen, 241 Mo. 325. (2) One in attempting to cross a railroad track will be presumed to have been in the exercise of proper care. Petty v. Railroad, 88 Mo. 320; Schlereth v. Railroad, 115 Mo. 100; McKenzie v. Railroad, 216 Mo. 21. (3) The duty of a vigilant watch for travelers about to cross the tracks rests upon the motorman of a street car and he is held to have seen what he might have seen. Ellis v. Railroad, 234 Mo. 657. (4) One who has observed the running of street cars in the city and saw the speed of the car which struck the traveler is qualified to put an estimate upon its speed. Ellis v. Railroad, 234 Mo. 657; Stotler v. Railroad, 200 Mo. 123.

LAMM, J.—Plaintiff, widow of Niels A. Lorenzen timely sued in the circuit court of St. Louis for statutory damages for his wrongful death at the hands of defendant. Verdict for defendant. New trial ordered and granted on plaintiff's motion. Defendant appeals from that order. Such strokes earmark the case.

The specifications of negligence are: (1) a violation of the "Vigilant Watch Ordinance," (2) the violation of an ordinance limiting the maximum speed of street cars in St. Louis at the place in hand to ten miles per hour—both, it is alleged, having causal connection with Lorenzen's death and both introduced in evidence. The Vigilant Watch Ordinance has been here often. It relates to the duty of employees in charge of a going street car in St. Louis to keep a vigilant watch for those approaching their tracks and to use diligence in stopping the car on the first appearance of danger to such persons. [White v. Railroad, 202 Mo. l. c. 549.] Its terms are not material to any issue here; for the court instructed on that ordinance and the jury found for defendant on that issue. Moreover, plaintiff does not now contend the order granting a new trial can be sustained because of error in the way that issue was put to the jury. So that if we held, as we would be bounden to do, that the *ratio decidendi* on the motion was immaterial, if other good ground existed, it would not mend matters a whit.

The court granted a new trial for error in ruling out testimony on negligent speed. By that ruling plaintiff was left without proof of the rate of speed of the car killing her husband and her case breaking down on that issue, it did not get to the jury. It is obvious, therefore, that if the court erred in excluding testimony on speed that error materially affected the merits, and, when later the trial court corrected that error by awarding a new trial, it did excellent justice. *Contra,* if the court did not err in excluding such tes-

timony, then it erred in granting a new trial because of such exclusion, the verdict for defendant should be reinstated and final judgment thereon follow as a sequence.

The shoe pinching at that precise point and nowhere else (under the briefs on both sides), the blunt and single question on this appeal is: Was there error in excluding testimony of eye witnesses on the speed of the car killing Niels A. Lorenzen? That question will be put in a form narrowing it very much presently when the actual ruling below is reached.

A word more on the record, before coming to the turning question:

Lorenzen was a teamster plying his calling at the time by driving a loaded coal wagon south on Broadway in St. Louis at dusk on November 12, 1907. South of (and approaching) him was one of defendant's street cars propelled by electricity, in charge of defendant's employees, running on defendant's track and about defendant's business of carrying passengers for hire. We take it the point of the accident was well lighted by street lamps, that Lorenzen could see the street car (and that those manning it could see him) for a block away—there being no turn in the street or obstructions. Defendant had two tracks on Broadway and Lorenzen was driving outside of both. O'Fallon intersects Broadway. At that intersection Lorenzen turned to cross defendant's tracks, on a line making an acute angle with the rails, to go down O'Fallon. He had got so far that his wagon was one-half over the track the car was on when it was struck about the middle by the oncoming car and he was thrown off and instantly killed, the car stopping in a few feet. There is testimony that the car was about sixty-five to seventy-five feet away when the team got on the track.

The facts and circumstances indicating that the car's rate of speed bore a causal connection to his

Lorenzen v. Railroad.

death, plaintiff sought to prove by two eye witnesses, O'Loughlin and Carroll, that the car's speed exceeded the ordinance limit. The testimony of Carroll we put to one side on this appeal. Because, whether it was admissible or not is immaterial in view of the further fact that if O'Loughlin was admissible we ought not to disturb the order granting a new trial.

I. At the threshold lies this guiding and general proposition to quicken us, namely:

Although the discretion of a trial court in granting a new trial is reviewable on appeal as the statutes read (R. S. 1909, sec. 2038), yet that discretion will not be interfered with unless manifestly abused below.

New Trial.

Such discretion has been defined as a "judicial" one—i. e., a *sound* discretion. It has also been defined as one to be exercised whenever in the judgment of the trial court an unfair advantage has been obtained at the expense of justice. It is a discretion appellate courts have encouraged trial courts in exercising to prevent a miscarriage of right, one we are reluctant to interfere with unless exercised capriciously, arbitrarily or improvidently, a discretion resting "mainly" and "peculiarly," it has been said, with the trial judge. [Schmidt v. Railroad, 149 Mo. l. c. 282; Stetzler v. Railroad, 210 Mo. l. c. 711; Rodan v. Transit Co., 207 Mo. l. c. 406; McCarty v. Transit Co., 192 Mo. l. c. 401, and cases cited.]

II. As said, the turning question may be narrowed. This task we now undertake, viz.: The eye witness, O'Loughlin, stood hardby the intersection of

Speed of Car: Expert: Teamster.

O'Fallon and Broadway; he saw the oncoming car sixty-five or seventy-five feet away at the time Lorenzen was driving on the track; he watched the car and saw all there was to see of the collision. He had been a teamster for many years on the streets of St. Louis; testified like a man of good sense and solid parts; was familiar

with the running of street cars on defendant's tracks on Broadway and other streets and had watched their rate of speed as they passed him while hauling. Indeed (as his testimony indicates) he was obliged to know how to estimate such speed to save himself in hauling on streets where such cars ran. His qualification to give an estimate of the speed, we think, was abundantly shown under the steadily maintained and liberal doctrine of our courts on that head.

The case calls for no new exposition of that doctrine; for in Stotler v. Railroad, 200 Mo. l. c. 123, et seq., the question is considered at length In Banc and unanimously ruled. (*Q. v:*) The authorities are there reviewed and the writer can add nothing more to what is there said. A later case, McCreery v. Railroad, 221 Mo. l. c. 27, may be taken as authority for denying probative force to a mere "guess" on the part of a witness, but there is no note of discord in principle between the Stotler and McCreery cases.

O'Loughlin being qualified to give an opinion, why was it excluded? Observe, his testimony was rejected *on the ground that he formed no opinion, judgment or estimate instantaneously* with the accident. A very few days later, on being inquired of for the first time, he then formed an opinion or estimate of the speed. A long, running, tri-lateral discussion between court and counsel on both sides is brought up, which it would serve no useful purpose to set forth in detail or summary, making it entirely clear that the only reason he was not allowed to give his opinion or estimate was as stated.

Opinion: Simultaneous With Accident.

The actual question, then, shifts or narrows itself to this:

May a witness, otherwise qualified to give a speed opinion, testify to that opinion when he did not form it instantaneously with the event itself, but afterwards?

Lorenzen v. Railroad.

We think the court erred in excluding the testimony on that ground, this because:

(a) To determine the admissibility of evidence by subtle distinctions and refinements, lurking in the convenient shade of psychology and metaphysics, is an experiment of questionable value in the everyday administration of the laws of a practical people. Too much metaphysics is bad in legal exposition. [Stauffer v. Railroad, 243 Mo. l. c. 325.] There is danger there and courts should sound at every step to see they are on solid ground.

Metaphysical Distinctions.

(*Note*: On the theory of the rhyming adage, *A little*—to-wit, a very little—*nonsense now and then, etc.,* I recall the facetious and rather sly definition of "mind" and "matter" laid at the door of a celebrated metaphysician, viz.: What is mind? *No matter.* What is matter? *Never mind.* It serves to somewhat earmark the elusiveness and obscurity inherent in the subject.)

So much, by mere way of warning.

(b) In the next place (and closer home) opinion evidence on speed is precisely of the same quality as opinion evidence on time, quantity, number, dimensions, height, distance or the like (*vide,* Lawson on Expert and Op. Ev., quoted in the Stotler case, supra, p. 123) and is admitted as evidence for the same reasons, viz., because, from the nature of the subject under investigation, no better evidence can be obtained or the facts cannot be otherwise presented to the tribunal.

Opinion Evidence: Speed.

(c) Finally (and still closer to the point) opinion evidence gathers efficacy and wisdom by reference to the phenomena of everyday experience and observation. The sources of judgment on the admissibility of such evidence are, therefore, to be looked for in the homely illustrations of everyday life. Let us take some hypothetical cases of that sort by way of illustration:

Gathered From Observation.

(1) John is asked to give the height of his favor-ite tree in his father's dooryard. Now, he has not seen that tree for many a day. He had never, that he remembered, formed an opinion of its height in his boyhood or since. In fact had never been asked the question before, or thought about its height in feet and inches. Is his estimate or opinion of the height of the tree of no value?

(2) Apply that same illustration to quantity or number. Mary, the maid, is asked by her mistress, Mrs. Wilkins Micawber, a week after the event, how many eggs and how much butter she borrowed from the neighbors across the way. The *number* and *quantity* had not interested Mary before, yet may she not give a fairly correct estimate on reconstructing the facts in her mind, viz., that she used both in making five cakes by the Micawber family recipe for use at a dinner given by Wilkins Micawber to Heep, Copper-field et al.?

(3) It becomes material to know, subsequent to the event, the distance between A and B. Henry hav-ing formed no opinion at the time of the occurrence, may he not on a review in his mind of all the incidents give an estimate of the distance worth while?

Nay, is not an opinion (say, of the speed of a car at the time it killed a man) which is formed after the event in a moment of calmness of more substance than one formed instantaneously in a moment of intense excitement or when the mind was off guard and taken by surprise?

Conceding that impressions may be formed spon-taneously (and simultaneously with the event) yet are *all* impressions formed that way? May not some good ones be the product of meditation, of deduction, of a review of known facts and recalled details?

We see no good reason why, subject to the su-preme test of cross-examination on the sources of his opinion, a witness may not give an opinion on the speed

of a car formed a few days after he saw its movement. Indeed, facts forming the true basis of an opinion may 'have been observed at the time of the event and yet the conscious opinion itself may not be formed at the time, but be the later product of the judgment. To rule otherwise would be an innovation of no substantial value in jurisprudence, as we see it, and would likely be spurious psychology as well.

Accordingly the circuit court committed no error in granting a new trial in this case.

Appellant cites a case from Nebraska (Mathieson v. Railroad, 97 N. W. 243) which, on first blush, seems to run a little counter to the views expressed. But critically analyzed, in view of the testimony there dealt with, we deem the case not an authority in support of 'the first ruling of the trial court in this case. The reasoning of a court and propositions ruled must be read in the dry light of the facts of the case and the issues on trial. [State ex rel. v. St. Louis, 241 Mo. l. c. 238, et seq.]

III. It is argued by appellant's counsel (and the record shows) that after the adverse ruling excluding the opinion, plaintiff made no formal tender of
the evidence she expected the witness to give. That, in other words, the record does not show the testimony excluded was material. Let us look to that. If the court had not granted a new trial and plaintiff was here on appeal without any showing of what the witness would testify, the case would present a phase not before us at this time—a phase more than once ruled. This case is different. It is an appeal from an order granting a new trial and must be judged from the viewpoint of the wise and wide discretion allowed to a trial judge in granting a new trial where he believes justice has suffered at his hands. The trial judge in

*Formal Tender of Evidence: Material.*

this case thought so and we are asked to say he had no right to think so. We cannot very well rule that way.

But, aside from that view, the point is disallowed to appellant because this record does indicate what the testimony of O'Loughlin would be. In his *voir dire* preliminary to the question finally ruled out, it is shown that his opinion would be the car was running from fifteen to sixteen miles per hour. Not only does that appear, but something more appears, viz., the whole trend of his examination, together with the ruling of the court and the objections of counsel, proceeded on the theory on all sides that his testimony would show a violation of the speed ordinance. Having secured the exclusion of the testimony on that theory, it is too late to now insist that the record does not show the excluded testimony to be material.

On the whole record, the premises considered, the order granting a new trial should be affirmed and the cause remanded to be proceeded with on the new trial awarded below. It is so ordered. All concur.