Day, J.
The Court of Appeals reversed the court of common pleas on two grounds: (1) That the witnesses who testified as to speed of the moving automobile were not previously qualified to show ability to express an opinion on the subject; (2) that the *98 prosecuting attorney in his argument made comment which was improper and prejudicial.
The general practice is that the witness who expresses an opinion touching such matter as is the subject of expert knowledge should first show his qualifications to express such an opinion. But when his opinion is based upon the ordinary observations of mankind, in the everyday affairs of life, where no great amount of technical training is necessary, while it is the better practice for the witness to state his previous experience and qualifications, yet it is not always essential to do so. It rests within the sound discretion of the court whether the witness may express an opinion or not. When the opinion is based upon personal observation of a subject upon which any ordinarily intelligent person may have expert knowledge and experience, qualification is not necessarily a prerequisite to stating the results of that observation and giving an opinion thereon. Some of the matters of common experience of mankind upon which a witness may express an opinion without special qualification other than his own intelligent observation are estimates of height, temperature, speed, time, lig'ht, weight, .identity, dimension, size and distance. So many matters of common observation are subjects upon which witnesses may give the benefit of their observation without previous preliminary expert qualification, that it would seem to be unnecessary to further enumerate them. The opinion is always subject to cross-examination, so that the experience of the witness, his means of observation, may be laid before the jury, who are to be the judges of the weight to be given the opinion in question. Unless the discre *99 tion of the court appeal’s to have been abused by permitting an expression of opinion by such a witness, a verdict should not be disturbed upon that ground.
In an early Michigan case, Detroit & Milwaukee Rd. Co. v. Van Steinburg, 17 Mich., 99, at page 104, Chief Justice Cooley, announced the rule in the following language:
“The motion of the train was to be compared to the motion of any other moving thing, with a view to obtaining the judgment of the witness as to its velocity. No question of science was involved, beyond what would have been, had the passing object been a man or a horse. It was not, therefore, a question for experts. Any intelligent man who has been accustomed to observe moving objects, would be able to express an opinion of some value upon it, the first time he ever saw a train in motion. The opinion might not be so accurate and reliable as that of one Avho had been accustomed to observe, Avith timepiece in hand, the motion of an object of such size and momentum; but this would only go to the weight of the testimony, and not to its admissibility. Any man possessing a knowledge of time and of distances would be competent to express an opinion upon the subject.”
“Persons who witnessed an accident, consisting of the running down of a pedestrian by an automobile, were competent to testify as to the rate of speed the automobile was going at the time.” Waltring v. James, 136 Md., 406, 111 Atl., 125.
“It is competent for any ordinary Avitness to express an opinion as to the speed an automobile Avas making at a given time, which is not, strictly speaking, a scientific inquiry, the weight of such opinion *100 being for the jury. ’ ’ Porter v. Buckley, 147 Fed., 140, 78 0. C. A., 138.
"An adult of ordinary intelligence and experience is presumably capable, without proof of further qualification, of expressing Ms opinion as to the speed of a passing antomobile wMeh he observes.” Wolfe v. Ives, 83 Conn., 174, 76 Atl., 526, 19 Ann. Cas., 752.
‘‘The rate of speed at which an antomobile was ran is not a matter exclusively for expert testimony. Witnesses who know what an automobile is and have seen them operated, may give- their opinion as to the rate of speed. The weight to which such opinions are entitled is a matter for the jury.” State v. Watson, 216 Mo., 420, 115 S. W., 1011.
To above specific eases the following may be added : Dugan v. Arthurs, 230 Pa., 299, 79 Atl., 626, 34 L. R. A. (N. S.). 778; Miller, v. Jenness, 84 Kan., 608, 114 Pac., 1052, 34 L. R. A. (N. S.), 782; Galveston, etc., Ry. Co. v. Harling (Tex. Civ. App.), 208 S. W., 207; Alabama, etc., R. R. Co. v. Hall, Admx., 105 Ala., 599, 17 South., 176; Louisville & St. L. Consolidated R. Co. v. Gobin, 52 Ill. App., 565-567; Johnson v. Coey, 142 Ill. App., 147; Johnson v. Underwood, 102 Or., 680, 203 Pac., 879; Kramm v. Stockton Élec. R. Co., 22 Cal. App., 737, 136 Pac., 523; Lorenzen v. United Railways Co., 249 Mo., 182, 155 S. W., 30; 2 Jones on Evidence, 874, Section 362; Johnston v. Bay State Street R. Co., 222 Mass., 583, 111 N. E., 391, L. R. A., 1918A, 650-652.
Many additional authorities might be.cited to support this view, but in the light of the foregoing we *101 feel that no prejudicial error intervened against defendant in error by the common pleas court permitting the witnesses in question, who were testifying from actual .observation, to express their opinion .as to the speed at which the machine was being operated by the defendant in error. Most of the witnesses giving their opinion had some experience upon the subject, and those who had no special experience appear to have been individuals of ordinary intelligence.
A person of ordinary intelligence and experience without proof of further qualification, who observes a passing automobile, is presumably capable of expressing his opinion as to its speed.
No abuse of discretion by the trial court in admitting this testimony appearing, this ground of error is denied.
The second ground of error complained of is that the assistant prosecuting attorney in his closing argument committed such misconduct that prejudicial error intervened on behalf of the defendant in error. So much of the record as relates thereto is as follows:
“Mr. Parsons: Mr. Goodman starts out by saying that I knew that the defendant, Auerbach, was never in the Joilet penitentiary for robbery. There is no evidence to that effect in this case. There is evidence given by Auerbach that he was not there, and for the purposes of this case we are bound to accept his statement that he did not serve three years in the Joliet penitentiary for robbery.
“Mr. Goodman: I object to that statement and take exception to it.
*102 “Mr. Parsons: I mean from the state of the evidence.
“The Court: I will say to the jury that that is not the law; that the state was not bound to accept that as being true. They might have offered evidence to disprove that.
“Mr. Parsons: In the absence of proof by the state that he did not serve that term, we are bound to accept his statement that he was not there, and we are to assume that he was not in the Joliet penitentiary and did not serve that time, and we are also in the state of the evidence bound to assume that he did not travel by some other name before he came to this country, and we are bound to assume by the state of the evidence that Abraham Auerbach was always his name. But I leave it to you, if you believe I would ever put those questions to him if I would not have a reasonable ground for the inquiry. (Objected to.) Do you think I picked out of the figment of my imagination the Joliet penitentiary and the change of name? (Objected to.)
“The Court: Mr. Parsons, I think you ought not to refer to that in argument under the present state of the evidence. I will say to the jury, you should draw no conclusions with reference to those particular questions prejudicial to the defendant in this action on this charge, that is, as to whether or not he was in the penitentiary.
“Mr. Parsons: For the purpose of this case I have conceded that he was not.
“The Court: For the purpose of this case yon must say that he was not.
“Mr. Parsons: My only comment is to the unwarranted statement of counsel by attempting to direct *103 your attention to me instead of to the case against this defendant. If Mr. Goodman wants the basis for my inquiry I will be glad to supply it to him.”
From the foregoing excerpt from the record it is apparent that the portion of the argument complained of was elicited by remarks of counsel in addressing the jury on behalf of the defendant, and that the assistant prosecuting attorney was replying to that portion of the argument.
It does not appear that in the opening argument for the state, or at any other point, counsel for the state had gone voluntarily into the subject of the Joliet imprisonment, but. that the door had been opened by the defendant’s counsel as to this matter; and that the assistant prosecutor in replying was endeavoring to exonerate himself from the reflection cast upon his fairness by the argument of the attorney for the defendant. But, even assuming the impropriety thereof, we think that the trial court, by his prompt instruction to the jury to disregard the same, cured, any error that might have-intervened in that regard. The jury were affirmatively directed in clear, terse, and mandatory language upon the subject. Having directed the assistant prosecutor not to refer to that subject in his argument, the trial judge then-used this language:
“I will say to the jury, you should draw no conclusions with reference to those particular questions prejudicial to the defendant in this action, on this charge, that is,' as to whether or not he was in the penitentiary.”
-. Surely the jury could not have misunderstood this plain, succinct, direct instruction, and, unless the record'discloses that they failed to abide by the ad *104 monition, but disregarded the same, we do not feel disposed to disturb the verdict.
Much reliance must be placed in the trial court to see that a fair trial is had and that no injustice is done either party. This is his highest duty, and only when he appears to have failed in this great trust will a reviewing court intervene.
“The trial judge who hears the arguments of opposing counsel is in a better position than the appellate court to determine whether he should interfere because of improper remarks, it being a matter within his sound discretion, and it is only where such discretion has clearly been abused that the Supreme Court will reverse the judgment for such cause.” Huckshold v. St. L., I. M. & S. Ry. Co., 90 Mo., 549.
“Impi'oper language used in argument is not ground for reversal, where such language was provoked by the remarks of counsel for the adverse party, unless it appears quite plainly that the verdict was influenced thereby; and especially is this true where exceptions to the argument are sustained, and the jury specifically instructed to disregard it. Moreover, the rule applies, although the language used would clearly authorize a reversal in the absence of such provocation.” 38 Cyc., 1501.
“A judgment will not be reversed because of the improper remarks of counsel for the prevailing party, where such remarks were apparently made in reply to similar remarks by appellant’s counsel.” Little v. Williams, 107 Mich., 652, 65 N. W., 568.
“Such improper argument having been invited by the argument of counsel for defendant, stating his personal conviction that plaintiff had not proved his case, defendant’s counsel who first offended could *105 not complain that plaintiff’s counsel put his personal opinion against that of defendant’s counsel.” Kenna v. Calumet, H. & S. R. Co., 284 Ill., 301, 120 N. E., 259.
“In an action for wrongful death of plaintiff’s intestate, caused by stabbing by defendant, plaintiff’s counsel’s statement, referring to the trial of the defendant on a criminal charge growing out of the transaction, held not prejudicial misconduct, where two of the defendant’s counsel first referred to the matter, showing that defendant was tried for murder, and that he had since been at home, plainly giving the inference that he had been acquitted. ’ ’ Hinnah v. Seaba et al., 193 Iowa, 1206, 188 N. W., 909.
Many other cases to the same effect could be cited, but the above will suffice.
The reversal of this judgment by the Court of Appeals was based upon the two grounds above mentioned, that is, first, the admissibility of evidence as to speed, and, second, the misconduct of counsel in argument to the jury, in regard to neither of which are we able to agree with the learned court below.
We have carefully examined the entire record, and are of opinion that there is ample evidence in the same to sustain the verdict of the jury. There was no error in our judgment in the refusal of the trial court to direct a verdict on behalf of the defendant below, nor in overruling the motion for a new trial. The charge of the trial court appears to have been a correct statement of the law applicable to the issues, and, upon the entire record we can find no prejudicial error justifying a reversal of the judgment of the court of common pleas.
*106 Entertaining these views, the judgment of the Court of Appeals is reversed, and the judgment of the common pleas is affirmed.

Judgment reversed.

Marshall, C. J., Wanamaker, Jones, Matthias and Allen, JJ., concur.
Bobinson, J., concurs in the syllabus, but not in the judgment.