NOT DESIGNATED FOR PUBLICATION

No. 126,376

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

JAMES WEBER,
*Appellant.*

MEMORANDUM OPINION

Appeal from Montgomery District Court; REBECCA STEWART, magistrate judge. Not submitted for oral argument. Opinion filed May 31, 2024. Affirmed.

*Brandon G. Kinney*, of Kinney and Associates, LLC, of Kansas City, Missouri, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., GARDNER and ISHERWOOD, JJ.

PER CURIAM: After a bench trial, the district court found James Weber guilty of speeding 85 mph in a 65-mph zone. The district court imposed a fine and court costs. Weber appeals, contending he was going only 75 mph. Having reviewed the record, we find no error.

*Factual and Procedural Background*

On June 19, 2021, around 10 a.m., Weber was traveling northbound on Highway 169 in Montgomery County, Kansas, in his Dodge Ram pickup truck. Weber travels the route frequently and knew that the speed limit was 65 mph. Kansas Highway Patrol Trooper Justin Riley, who had been a trooper for three-and-a-half years, was traveling southbound on that same stretch of highway. He had a clear and unobstructed view of Weber's truck, the only northbound vehicle, as it approached him.

As Weber's truck came toward him, Riley noticed it was traveling at a high rate of speed, so he used his vehicle's radar. It indicated that Weber was going 85 mph, which was consistent with Riley's visual observation. No other vehicles were present to interfere with the measurement of the speed of Weber's truck or Riley's visual assessment.

Because Weber was traveling 20 miles over the posted speed limit, Riley engaged his patrol vehicle's emergency lights. Riley turned around, stopped Weber, and issued him a speeding citation for going 85 mph in a 65-mph zone.

At Weber's bench trial, Riley and Weber testified to the evidence below. At the beginning and end of Riley's shift that day, he had performed a tuning forks test on his radar equipment to ensure the equipment's readings were accurate. He became certified to operate the equipment and test it with the tuning forks shortly after he completed the highway patrol academy and his field training, which was about two years earlier. He had taken no recertification training. The equipment he used that day was the same he had been issued when he started the job. Riley uses the radar equipment every day on the job.

Weber admitted that he was distracted, thinking about his son who had traveled that route with him every weekend for the past five years and had recently passed away. Once Weber noticed the approaching emergency lights, he checked his speedometer

which said he was going 75 mph, yet he had no knowledge whether it was accurate. Other than looking at his speedometer, Weber had no evidence to support that he was going 75 mph rather than 85 mph. Weber essentially argued that his speedometer was more accurate than the trooper's radar because his 2019 model truck had been purchased only six months before his speeding incident. But he bought it used. Weber asked to be found guilty of speeding 10 mph over the legal limit.

When issuing its ruling, the trial court addressed the reliability of the radar's reading versus the speedometer's reading:

> "[Defense counsel], you are asking me to do—to assume that the radar was faulty, but not to assume that [Weber's] vehicle was faulty. I think the Greater Public Policy argument is absent proof of actual fault in the radar equipment itself. The community is better served to work under the presumption that until proven otherwise, the radar equipment used by our law enforcement community is in fact working properly.

> "Having found that, I recognize there is a variance. But we can't—we can't rule on variances, we have to rule on actualities. And the uncontroverted testimony was that the radar read 85; that the defendant admitted he was, in fact, speeding. He further admitted he didn't know whether the speedometer on his vehicle is true or not true. So I'm going—I'm going to find that he was, in fact, guilty of speeding 85 in a 65 on the day as cited and assess a fine thereof."

The district court found Weber guilty of speeding 85 mph in a 65-mph zone and assessed a fine of $105 and $108 in court costs, for a total of $213.

Weber timely appeals.

*Sufficient evidence supports Weber's speeding conviction.*

On appeal, Weber argues that insufficient evidence supports his conviction for driving 85 mph in a 65-mph zone. He argues that the district court erred by relying on the radar because it lacked proper foundation and that the district court improperly presumed that the radar was working properly, lessening the State's burden of proof. The State responds that sufficient evidence supports Weber's conviction because Weber failed to object at trial to the radar's foundation, rendering it unchallengeable on appeal. And it argues the district court's "presuming" about which equipment was working properly was merely the judge assessing the reliability or weight of the evidence, not applying a rebuttable presumption.

When reviewing the sufficiency of the evidence to support a conviction, an appellate court looks at all the evidence in the light most favorable to the State to decide whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. In doing so, we do not reweigh evidence, resolve evidentiary conflicts, or reassess witness credibility. *State v. Spencer*, 317 Kan. 295, 302, 527 P.3d 921 (2023). Generally, appellants need not have challenged the sufficiency of the evidence at the district court to preserve that issue for appeal. *State v. Hilyard*, 316 Kan. 326, 330, 515 P.3d 267 (2022).

The appellant bears a high burden to succeed on a sufficiency of the evidence claim, and "only when the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020). As the appellate courts often recite, "a conviction of even the gravest offense can be based entirely on circumstantial evidence." *State v. Banks*, 306 Kan. 854, 858, 397 P.3d 1195 (2017).

As aptly stated by another panel of this court, "[u]nlike hundreds of other crimes, speeding is an absolute. You are either speeding or you are not speeding." *State v.*

4

*Bahney*, No. 126,055, 2024 WL 657925, at *2 (Kan. App. 2024) (unpublished opinion). To prove that Weber was speeding, the State had to prove that he was operating a vehicle over 65 mph. K.S.A. 8-1558(a)(4).

*Foundation*

We first address Weber's argument that the district court improperly relied on the radar evidence because the equipment had not been calibrated since June 2019 and Riley had not been recertified on that equipment.

> "'The proponent of a particular kind of evidence, whether it be a physical object or the testimony of a witness, is required to lay a foundation before it may be admitted into evidence.' 3 Barbara, Kansas Law and Practice, Lawyers Guide to Kansas Evidence, § 1.9, p. 28 (5th ed. 2013)." *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

See *Banks*, 306 Kan. at 865 (quoting *Wiles* in criminal context). Proper admission of radar evidence requires the State to show the following foundation: (1) The operator tested the radar in accordance with accepted procedures; (2) the radar was functioning properly; and (3) the operator was qualified by training and experience to use the radar. *State v. Primm*, 4 Kan. App. 2d 314, 315-16, 606 P.2d 112 (1980); *State v. Anderson*, No. 114,447, 2016 WL 3961436, at *4 (Kan. App. 2016) (unpublished opinion).

But the State contends that K.S.A. 60-404 prevents Weber from raising lack of foundation now:

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

5

Put another way, a party must make a contemporaneous and specific objection to the admission of evidence to preserve the issue for appeal. *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016).

At this bench trial, the radar evidence was admitted without any objection. Accordingly, Weber cannot challenge the lack of foundation for admission of this evidence, including any minimum certification or recertification issues. See *Primm*, 4 Kan. App. 2d at 315-16.

But even had Weber objected, a sufficient foundation supports admission of the radar evidence. Riley testified that he tested the radar before and after his shift by using the tuning forks, the radar was functioning properly, and Riley received certification to use the radar and relied on his training when so doing. See *Bahney*, 2024 WL 657925, at *3 (holding proper foundation of radar evidence laid when trooper tested radar before and after shift, testified it was working properly, and was certified to use the equipment).

And no evidence shows that Kanas requires recertification. Weber makes a policy argument that Kansas should do so, as do some other states. And Weber notes that the federal government suggests recertification of radar equipment operators every three years or as prescribed by state law. See 32 C.F.R. § 634.27 (2023). But even if we assume that the federal regulation applies here, the evidence shows that Riley's certification would comply with this requirement. He became certified to operate the radar shortly after he graduated from the trooper academy in June 2019, and his use of the radar was in June 2021, just two years after Riley's certification.

Because the State laid a proper foundation for admission of the radar evidence, the district court properly relied on it to convict Weber of speeding. Although Weber's testimony as to his speed contradicted the trooper's assessment of his speed, on appeal we

must view the evidence in the light most favorable to the prosecution, and we cannot reweigh evidence. *Spencer*, 317 Kan. at 302.

*Alleged Presumption*

Second, Weber argues that the district court judge improperly used a rebuttable presumption which reduced the State's burden of proof, making his conviction unconstitutional. The State counters that the district court judge's poor choice of words shows that she was merely discussing how she weighed the conflicting evidence.

The district court stated:

"[Defense counsel], you are asking me to do—to assume that the radar was faulty, but not to assume that [Weber's] vehicle was faulty. I think the Greater Public Policy argument is absent proof of actual fault in the radar equipment itself. *The community is better served to work under the presumption that until proven otherwise, the radar equipment used by our law enforcement community is in fact working properly*.

"Having found that, I recognize there is a variance. But we can't—we can't rule on variances, we have to rule on actualities. And the uncontroverted testimony was that the radar read 85; that the defendant admitted he was, in fact, speeding. He further admitted he didn't know whether the speedometer on his vehicle is true or not true. So I'm going—I'm going to find that he was, in fact, guilty of speeding 85 in a 65 on the day as cited and assess a fine thereof." (Emphasis added.)

At a bench trial, the district court judge serves in the place of the jury as the fact-finder. *State v. Dority*, 50 Kan. App. 2d 336, 343, 324 P.3d 1146 (2014). We do not delve into the judge's mental processes in reaching her conclusions but examine her words in context. Cf. *State v. Martinez*, 288 Kan. 443, 449, 204 P.3d 601 (2009).

7

A look at the law of evidentiary presumptions helps us determine whether the district court used one here. "[E]videntiary devices such as presumptions and inferences exist along a continuum." *State v. Strong*, 317 Kan. 197, 203, 527 P.3d 548 (2023). On one end of this continuum is a permissive inference, "which allows, but does not require, the jury to infer the elemental fact once the State has proved the predicate fact, and which places no burden of any kind on the defendant." 317 Kan. at 203. On the other end of this inference-presumption continuum is a mandatory presumption, which "'instructs the jury that it must infer the presumed fact if the State proves certain predicate facts.'" *State v. Holder*, 314 Kan. 799, 804, 502 P.3d 1039 (2022) (quoting *Francis v. Franklin*, 471 U.S. 307, 314, 105 S. Ct. 1965, 85 L. Ed. 2d 344 [1985]).

Mandatory presumptions consist of two "camps"—either conclusive or rebuttable. *Holder*, 314 Kan. at 804. Of importance here are rebuttable presumptions. A rebuttable presumption "does not remove the presumed element from the case but nevertheless requires the jury to find the presumed element unless the accused persuades the jury otherwise. That is, once the State proves certain facts, the jury must infer [the element] from those facts, unless the accused proves otherwise." *State v. Harkness*, 252 Kan. 510, Syl. ¶ 13, 847 P.2d 1191 (1993); see *Holder*, 314 Kan. at 805 (quoting *Harkness*). Under K.S.A. 21-5108(a), "[i]n all criminal proceedings, the state has the burden to prove beyond a reasonable doubt that a defendant is guilty of a crime. This standard requires the prosecution to prove beyond a reasonable doubt each required element of a crime." Thus, "rebuttable presumptions are unconstitutional if they relieve the State of its burden of persuasion on an element of an offense or if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Harkness*, 252 Kan. 510, Syl. ¶ 13.

Some examples of rebuttable presumptions in Kansas law include K.S.A. 21-5705(e)(2), which "requires the jury to presume an intent to distribute if a defendant possessed at least 3.5 grams of methamphetamine, unless the defendant rebuts that

presumption with affirmative evidence to the contrary (for example, by presenting evidence that the defendant possessed the substance for personal use)," *State v. Martinez*, 317 Kan. 151, 157, 527 P.3d 531 (2023), and presumptions of parentage found in K.S.A. 23-2208(a), which can be rebutted by clear and convincing evidence. See K.S.A. 23-2208(b). We note that challenges to K.S.A. 21-5705(e)'s constitutionality have been raised recently, but these claims have not yet been substantively addressed. See, e.g., *Martinez*, 317 Kan. at 157; *Holder*, 314 Kan. at 808.

With all this context in mind, we reexamine the district court's statements.

"[Defense counsel], you are asking me to do—to assume that the radar was faulty, but not to assume that [Weber's] vehicle was faulty. I think the Greater Public Policy argument is absent proof of actual fault in the radar equipment itself. *The community is better served to work under the presumption that until proven otherwise, the radar equipment used by our law enforcement community is in fact working properly*." (Emphasis added.)

The district court judge uses the words "assume" and "presume" when explaining her assessment of the evidence. "Assume" is defined as "suppose (something) to be a fact." Webster's New World College Dictionary 87 (5th ed. 2018). "Presume" is defined as "accept as true, lacking proof to the contrary; suppose." Webster's New World College Dictionary 1153 (5th ed. 2018). The dictionary's synonym block distinguished between the two in stating: "[P]resume implies a taking something for granted or accepting it as true, usually on the basis of probable evidence in its favor and the absence of proof to the contrary," whereas "assume implies the supposition of something as the basis for argument or action." Webster's New World College Dictionary 1153 (5th ed. 2018). Black's Law Dictionary defines "presume" as "[t]o accept something as true until it is shown not to be true" and "[t]o assume beforehand; to suppose to be true in the absence of proof." Black's Law Dictionary 1435 (11th ed. 2019).

9

It seems, here, the nuance between "assume" and "presume" was lost on the district court. When viewing the district court judge's comments in context, we find she did not apply a rebuttable presumption, but made a poor choice of words when assessing the credibility of the evidence. She explained that Weber was asking her to believe that the radar was inaccurate and Weber's speedometer was accurate.

According to the district court judge, the soundest conclusion was to give more credit to the trooper's radar, absent evidence it was not working properly. This conclusion was not made in a vacuum. The district court had heard the trooper's unchallenged testimony that he had tested the radar before and after his shift by using the tuning forks, that the radar was functioning properly, that he was certified to use the radar, and that he relied on his training when finding Weber was going 85 mph. "[A] trial judge is allowed to use his or her common knowledge and experience to determine the credibility of a witness and assess the weight of a witness' testimony." *Dority*, 50 Kan. App. 2d at 343. In using her common knowledge and experience, coupled with the foundation laid by the trooper, she credited the radar rather than Weber's speedometer. This was correct because there was no evidence that the radar was not functioning properly. The trooper testified that his radar was functioning properly and testified why he reached that conclusion, while Weber could not say whether his speedometer was accurate.

Rebuttable presumptions that lessen the State's burden apply to elements of the crime. See *Harkness*, 252 Kan. 510, Syl. ¶ 13 ("A rebuttable presumption does not remove the presumed element from the case but nevertheless requires the jury to find the presumed element unless the accused persuades the jury otherwise. That is, once the State proves certain facts, the jury must infer [the element] from those facts, unless the accused proves otherwise."). Here, the asserted presumption did not relate to an element of the crime but to evidence of the crime. The district court did not assume that Weber was speeding until proven otherwise. Rather, when weighing the reliability of the radar and the speedometer, the district court judge found it better policy to credit the radar, absent

evidence it was not working properly. Although we do not make policy decisions, we agree that the district court did not err by finding the radar more accurate than the speedometer.

Finally, an officer's visual observations are enough to determine that a vehicle is speeding. See *Hampton v. State Highway Comm'n*, 209 Kan. 565, 583, 498 P.2d 236 (1972) (holding "we long ago recognized that lay opinions on the observed speed of an automobile are proper"); *Miller v. Jenness*, 84 Kan. 608, Syl., 114 P. 1052 (1911) ("Where the rate of speed of such a vehicle is material in an action, any person of ordinary ability and means of observation who may have observed the vehicle may give his estimate as to the rate of speed at which it was moving."); *State v. Butts*, 46 Kan. App. 2d 1074, 1085, 269 P.3d 862 (2012) (holding an officer's "observation of a moving vehicle which results in the officer's estimation that the vehicle is moving in excess of the posted speed limit may constitute, under the totality of the circumstances, reasonable suspicion that the driver is speeding in violation of the law"); *Stafford v. Karmann*, 2 Kan. App. 2d 248, Syl. ¶ 1, 577 P.2d 836 (1978) (holding "[l]ay opinion regarding the speed of a vehicle is admissible under K.S.A. 60-456[a]"). So even if the radar evidence were excluded, Riley's visual assessment of Weber's speed would be enough to support his speeding conviction.

In conclusion, Weber did not properly preserve his attack to lack of foundation for admission of the radar evidence, sufficient evidence supports Weber's speeding conviction, and the district court did not apply an improper rebuttable presumption.

Affirmed.