(772 P.2d 1251)

No. 61,899

STATE OF KANSAS, *Appellee,* v. JAMES J. WHITEHURST; *Appellant.*

Opinion filed November 10, 1988.

*Steven R. Zinn* and *David Gottlieb,* supervising attorneys, and *Margaret A. Farley,* legal intern, of Kansas Appellate Practice Clinic, of Lawrence, and *Benjamin C. Wood,* chief appellate defender, of Topeka, for appellant.

*Rodney H. Symmonds,* county attorney, *Melanie S. Jack,* assistant county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before BRAZIL, P.J., M. KAY ROYSE, District Judge, assigned, and PHILIP C. VIEUX, District Judge, assigned.

*Per Curiam:* James J. Whitehurst appeals his conviction of driving after being declared a habitual violator (K.S.A. 8-287) and driving with illegal registration (K.S.A. 1987 Supp. 8-142). Whitehurst contends (1) the stopping of his car was unlawful and

that evidence obtained from that stop should have been suppressed, and (2) his conviction and sentencing under K.S.A. 8-287 violated his constitutional right to counsel where his status as a habitual violator was predicated upon two uncounseled misdemeanor convictions. We affirm.

## The Stop

The Kansas guidelines for investigatory stops by law enforcement officers are set forth in K.S.A. 22-2402(1), which provides: "Without making an arrest, a law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a crime and may demand of him his name, address and an explanation of his actions."

The Kansas Supreme Court has stated the following rule for investigative stops: "[W]e believe that the 'stop' authorized by 22-2402 requires that a law enforcement officer must have prior knowledge of facts or observe conduct of a person which causes the officer to reasonably suspect that such person is committing, has committed, or is about to commit a crime." *State v. Jackson*, 213 Kan. 219, 225, 515 P.2d 1108 (1973).

In *State v. Baker*, 239 Kan. 403, 407, 720 P.2d 1112 (1986), the court explained the rule as follows: "Thus a stop and frisk under [*Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d. 889, 88 S. Ct. 1868 (1968),] and K.S.A. 22-2402 requires that the officer have a reasonable and articulable suspicion, based on facts known to him or her prior to the stop, that the individual stopped has committed, is committing, or is about to commit a crime." 239 Kan. at 407.

Whitehurst maintains that all the evidence obtained from Officer Hendrickson's stop should be suppressed because Hendrickson lacked a reasonable suspicion that Whitehurst was committing a crime. He argues that the State failed to prove that he had committed the two traffic violations, reckless driving and speeding, which Officer Hendrickson observed prior to the stop. Whitehurst also asserts that his actions prior to the stop could not support a reasonable suspicion that he was intoxicated. Relying on *State v. Deskins*, 234 Kan. 529, 673 P.2d 1174 (1983), and *Delaware v. Prouse*, 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979), Whitehurst submits that the purpose of the stop was an unconstitutional random driver's license check.

Under K.S.A. 22-3216(2), upon a motion to suppress illegally seized evidence, the State has the burden of proving that the search and seizure were lawful. In the instant case, Officer Hendrickson needed a reasonable and articulable suspicion of criminal activity based on facts he knew prior to stopping Whitehurst. The trial court found that Officer Hendrickson had a reasonable suspicion to stop Whitehurst.

Early in the morning, Officer Hendrickson observed Whitehurst's vehicle stop at a stop sign, proceed forward approximately 50 yards, stop, and then back up past the same stop sign. Whitehurst then accelerated forward, causing his tires to squeal, spin, and throw gravel. Upon observing what he considered to be abnormal driving behavior, Officer Hendrickson formed a reasonable suspicion that there was something wrong with the driver. Hendrickson's first suspicion was that the driver was intoxicated. Hendrickson also considered the possibility that the driver was sick or upset. Based upon his personal observation of Whitehurst, Officer Hendrickson reasonably suspected that either Whitehurst was committing a crime by driving while intoxicated or was about to commit a crime because of illness, anger, or some other problem.

In addition to Whitehurst's uncommon driving behavior, Officer Hendrickson also observed what he reasonably believed were two traffic violations: speeding and reckless driving. Under K.S.A. 22-2402(1), a law enforcement officer may stop a person whom he sees commit a traffic offense and ask the person for his name and an explanation of his actions. See *State v. Guy*, 242 Kan. 840, 752 P.2d 119 (1988). After observing Whitehurst commit two traffic violations, Officer Hendrickson complied with the statute by stopping Whitehurst and requesting identification. Officer Hendrickson was then able to run a routine check and discover Whitehurst's habitual violator status and illegal registration. Under K.S.A. 22-2402(1) and *State v. Guy*, 242 Kan. 840, Officer Hendrickson was not required to issue citations for reckless driving and speeding. He only needed a reasonable suspicion that Whitehurst had committed these offenses in order to make an authorized investigative stop. The evidence does not support Whitehurst's contention that Officer Hendrickson was making a random driver's license check.

The trial court correctly denied the motion to suppress, basing

the denial on its finding that Officer Hendrickson had a reasonable suspicion to stop Whitehurst.

### Prior Uncounseled Misdemeanor

After stopping Whitehurst, Officer Hendrickson asked to see a driver's license. Whitehurst identified himself and told Officer Hendrickson that he did not have his driver's license with him. Upon contacting the radio dispatcher, Officer Hendrickson learned that Whitehurst's driver's license had been revoked, that Whitehurst had been declared a habitual violator (K.S.A. 1987 Supp. 8-285), and that he was under court order not to drive.

The finding that Whitehurst was a habitual violater apparently was based upon Whitehurst's three convictions for driving with a suspended license (K.S.A. 1987 Supp. 8-262) and a diversion agreement which Whitehurst entered into after being arrested for driving while under the influence of alcohol or drugs (K.S.A. 1987 Supp. 8-1567). Whitehurst claims that he was not represented by counsel and did not waive his right to counsel on his first two convictions for driving with a suspended license.

K.S.A. 1987 Supp. 8-285 defines a habitual violator as a person who in the last five years has been convicted three or more times, singly or in combination, of certain enumerated offenses. Driving while under the influence of alcohol or drugs and driving with a suspended license are included in this list of offenses. K.S.A. 1987 Supp. 8-285(a)(2) and (3). A diversion agreement which is entered into after an arrest under K.S.A. 1987 Supp. 8-1567 is treated as a conviction under K.S.A. 1987 Supp. 8-285. K.S.A. 8-286 sets forth the procedures for declaring a person to be a habitual violator. K.S.A. 8-287, under which Whitehurst was convicted in the instant case, provides that driving after being declared a habitual violator is a class E felony.

The Kansas Supreme Court has held that a proceeding under K.S.A. 8-286 is a civil proceeding since the statute does not create a new crime but rather provides for a determination of a driver's status. *State v. Boos*, 232 Kan. 864, 659 P.2d 224, *cert. denied* 462 U.S. 1136 (1983). In *Boos*, the court found that, although a K.S.A. 8-286 proceeding may result in the revocation of a person's privilege to drive, such revocation does not make the habitual violator status a crime as defined in K.S.A. 1987 Supp. 21-3105. The court noted that no criminal sanctions are imposed upon this status determination. 232 Kan. at 870.

In *Boos*, the State appealed the trial court's dismissal of its action seeking to declare the defendant a habitual violator. The Kansas Supreme Court considered defendant's argument that the evidence was insufficient to support a determination that he was a habitual violator because one of his underlying convictions was based on a guilty plea where the court did not advise the defendant of his constitutional rights and he did not waive them. The court disagreed and held as follows:

"The prior convictions of the defendant in this action are not now subject to attack in an action under K.S.A. 8-286 based upon allegations that defendant was deprived of his constitutional rights in the prior criminal cases. An action under K.S.A. 8-286 is a civil action and the constitutional guarantees as applied in criminal proceedings are not applicable to the same extent in such a civil case. The attempt to assert a collateral attack in this action upon prior criminal convictions, based upon an alleged failure to show the defendant in those actions did not knowingly, intelligently and voluntarily waive his various constitutional rights, lacks merit." 232 Kan. at 872.

In reaching its decision in *Boos*, the Kansas Supreme Court considered several United States Supreme Court cases concerning the right to counsel for misdemeanor offenses and the use of prior uncounseled misdemeanor convictions under an enhanced penalty statute, including *Baldasar v. Illinois*, 446 U.S. 222, 64 L. Ed. 2d 169, 100 S. Ct. 1585 (1980). The consensus of the three concurring opinions in *Baldasar* is that a prior uncounseled misdemeanor conviction cannot be used under an enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term. In *Boos*, the Kansas Supreme Court found that the holding of *Baldasar* did not apply to the same extent in a civil proceeding to determine habitual violator status as it would in a direct attack on a criminal conviction or in an action under K.S.A. 60-1507.

In the instant case, Whitehurst asserts that his conviction for driving after being declared a habitual violator violates his right to counsel because two of the four convictions underlying the habitual violator adjudication were uncounseled misdemeanor convictions. In *State v. Boos*, the court stated it was not being asked to consider the defendant's arguments as they would relate to underlying uncounseled misdemeanor convictions in a prosecution for driving after being declared a habitual violator under K.S.A. 8-287. However, the court provided guidance in deciding this issue by quoting a portion of *Whorley v. Commonwealth*,

215 Va. 740, 214 S.E.2d 447, *cert. denied* 423 U.S. 946 (1975), a case considering this issue prior to the decision in *Baldasar v. Illinois.* 232 Kan. at 873.

In *Whorley v. Commonwealth,* the court found that an underlying uncounseled conviction and habitual offender adjudication were only indirectly connected with the defendant's loss of liberty upon his conviction for driving after being adjudged a habitual violator. The court stated that the link between the defendant's prior uncounseled misdemeanor conviction and his conviction for driving after being declared a habitual violator was "not only remote, but would be nonexistent except for the deliberate commission of a criminal act by defendant. It was his option, and by his choice, that his liberty was placed in jeopardy." 215 Va. at 747. The court reasoned that the defendant faced imprisonment not because of the convictions which were used to adjudge him a habitual offender, but because of his criminal actions subsequent to such adjudication. See *State v. Tharpe,* 459 So. 2d 44 (La. App. 1984); Annot., 48 A.L.R.4th 367, 448.

Following the reasoning of *Whorley v. Commonwealth,* Whitehurst's argument must fail. Any penalties subsequently imposed for driving after being declared a habitual violator are not based upon or connected with previous uncounseled misdemeanor convictions. Whitehurst's present conviction and sentence are based upon the intervening civil adjudication which resulted in the loss of his driving privileges. Unlike sentence enhancement statutes such as the one found in *Baldasar v. Illinois,* K.S.A. 8-287 does not enhance an offender's punishment based upon a prior conviction. Rather, K.S.A. 8-287 imposes a penalty based upon a prior status determination in a civil proceeding.

Affirmed.