No. 74,391

STATE OF KANSAS, *Appellee*, v. BOBBY SOUTHARD, *Appellant.*

933 P.2d 730

Opinion filed March 7, 1997.

*Hazel Haupt*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is primarily a K.S.A. 22-3402 speedy trial case. Defendant Bobby Southard was convicted of one count of rape. See K.S.A. 21-3502.

We consider three issues: (1) Was Southard's statutory right to a speedy trial violated; (2) was the evidence sufficient to support the conviction of rape; and (3) does a police officer's negative answer when the prosecutor inquired whether the officer believed Southard's story constitute reversible error?

We find no error and affirm. Our jurisdiction is under K.S.A. 22-3601(b)(1) (maximum sentence of life imprisonment imposed).

## FACTS

On April 22, 1993, J.G., a 12-year-old girl, was babysitting for the first time with the next-door neighbors' two small children. Before leaving, the children's mother told J.G. that her brother (Southard) "might come over to pick up his mail."

The first time Southard came to the house that day, J.G. gave Southard his mail, and he left.

Later Southard returned and went into the bathroom. J.G. testified that when Southard came out of the bathroom, he locked and chained the front and back doors to the house and turned off the lights. He asked J.G. to go to the back room with him "because he wanted to show [her] a game that the girls like to play." J.G. testified that she said, "No."

According to J.G., Southard continued to ask and she continued to refuse. She ran to the door, but before she got it unlocked, Southard relocked it and grabbed J.G. around the waist. He took her into a bedroom, threw her on the bed, and told her to take off her clothes. When she did not undress, Southard pulled off her clothes. He took off his own pants and underwear, laid J.G. down on the bed, and got on top of her. He kissed her on and "in the mouth" and on her breasts. He put his penis into her vagina.

J.G. testified that Southard got a knife from underneath a tool box which was in the bedroom. He put the knife to her neck. J.G. could not remember what Southard said when he held the knife to her neck. J.G. testified that she was trying to push Southard off before he got the knife. She put up less resistance after he had the knife out.

After a couple of minutes, Southard went to the bathroom. While he was gone, J.G. put her clothes back on, and when Southard reappeared he was dressed. After telling J.G. not to tell anyone and to continue to babysit with the children, Southard left.

Because she was scared, J.G. did not tell anyone right away. The first person she told was her friend, D.R. Asked whether she told D.R. what happened, J.G. testified, "I told her that I had been raped." J.G. was not certain but thought that she had told D.R. about the knife. D.R. advised J.G. to tell an adult, but J.G. did not want to. D.R. then told an adult, who told J.G.'s mother. J.G. was then checked by a doctor. J.G.'s mother reported the incident to police.

The doctor J.G. saw referred her to Dr. Lynn Sheets, director of the Sexual Abuse Program at the University of Kansas Medical Center. Dr. Sheets' examination of J.G. revealed that the appearance of one part of her hymen made it a "suspicious area for

heal[ed] trauma," which would be "very much consistent with the history" given by J.G. of the single experience of sexual intercourse.

## DISCUSSION
### The Right to a Speedy Trial

Southard claims a violation of his K.S.A. 22-3402 speedy trial right.

On April 20, 1994, Southard was arraigned on the rape charge. Trial began on October 3, 1994. Southard was held in custody from the date of arraignment until the date trial began. The time elapsed was 166 days. On the first day of trial, the district court heard and denied Southard's motion to dismiss on the ground that his statutory right to speedy trial had been violated.

K.S.A. 22-3402(1) provides, in part:

"If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within ninety (90) days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant."

Southard contends that only 64 (29 days between May 18 and June 16 and the 35 days between July 25 and August 29) of the 166 days between arraignment and trial are attributable to him. The remaining 102 days, he argues, are attributable to the State.

The statutory time for a speedy trial begins on the date of arraignment. *City of Derby v. Lackey*, 243 Kan. 744, 745, 763 P.2d 614 (1988). Because only the State is empowered to bring a criminal charge to trial, it is the State's obligation to ensure that the accused is provided with a speedy trial. *State v. Prewett*, 246 Kan. 39, 42, 785 P.2d 956 (1990). Delays which result from defendant's application or fault, however, are not to be counted in computing the statutory period. *State v. Warren*, 224 Kan. 454, 456, 580 P.2d 1336 (1978).

The district court concluded that the 28 days between arraignment on April 20 and the May 18 hearing requested by Southard and scheduled by both parties for substantive motions was attributable to Southard. That 28-day period, added to the two periods for which Southard accepts responsibility, totals 92 days. Thus, by

the district court's calculation, 74 days were attributable to the State, and Southard was brought to trial well within the statutorily allotted time. A majority of this court agrees.

Southard maintains that the 28 days between April 20 and May 18 should not be attributed to him, because his only motions pending during that period were "standard motions for discovery," which required no hearings and caused no delay. The State contends that the 28 days should be attributed to defendant because of the defense motions pending during that time.

The record shows that Southard was arraigned immediately after being bound over at the end of the preliminary hearing. As soon as Southard pled not guilty to the charge, the district court asked defense counsel: "Are you desirous of motion setting, Mr. Lewis or did we need . . . ." Counsel answered:

"MR. LEWIS [for the defense]: We will need a motion setting.
"MS. BROCK [prosecuting attorney]: I also have a motion to file as well."

When the district court asked counsel to estimate how much time they would need to present their motions, the following exchange took place:

"MS. BROCK: I have a 60-455 but mine will probably take half hour.
"MR. LEWIS: If hers would take 45 minutes.
"THE COURT: Hour enough?
"MR. LEWIS: I also got motions to suppress.
"THE COURT: Hour and a half?
"MR. LEWIS: I think two.
"THE COURT: Two hours. All right.
"THE BAILIFF: May the 18th at 1:30.
"THE COURT: 1:30, May the 18th for motions."

There is no entry for May 18 on the appearance docket or transcript of a hearing on that date in the record. On June 9, 1994, the defense filed a motion to suppress statements made by defendant to Olathe police and noticed the motion for hearing on June 16, 1994. On June 13, 1994, the prosecution filed a motion to admit evidence under K.S.A. 60-455 of an earlier attempt by Southard to rape a young girl. The defense withdrew the motion to suppress on June 16, 1994, although the prosecution did present its motion.

A supplemental prosecution motion on the same subject was filed June 28, 1994.

At the time counsel presented argument on Southard's motion to dismiss for failure to meet the statutory speedy trial requirement, the district court noted that the motion hearing which had been scheduled for May 18 was "continued jointly from May 18 to June 16." As previously noted, Southard accepts responsibility for the 29 days between May 18 and June 16.

We focus on the April 20 to May 18 period. On April 20, the district court set aside 2 hours on May 18, as requested by Southard's counsel, to hear Southard's motions to suppress, not the discovery motion. Defense counsel initiated the May 18 setting, although the State also indicated it had a K.S.A. 60-455 motion. Under the facts of this case, the 28-day period was a delay caused by the application of Southard.

A continuance is properly charged to the defendant if it is either the result of the application of the defendant or if it is the result of the fault of the defendant. *State v. Timley*, 255 Kan. 286, Syl. ¶ 4, 875 P.2d 242 (1994). A defendant, by his or her conduct, may waive the statutory right to a speedy trial. Such conduct includes requesting or even acquiescing in the grant of a continuance. Defense counsel's actions are attributable to defendant in computing speedy trial violations. *State v. Brown*, 249 Kan. 698, Syl. ¶ 4, 823 P.2d 190 (1991).

We believe defense counsel's request at arraignment for a motion hearing, followed by the district court's accommodation of reserving the 2 hours counsel suggested for motions to suppress, requires the charging of the period between arraignment and the initially scheduled motion hearing to the defendant.

Southard cites *City of Dodge City v. Downing*, 257 Kan. 561, 894 P.2d 206 (1995), which considers the effect a defendant's filing a motion should have on the computation of speedy trial time. Our rule is that a reasonable time taken by the parties and the court to process the motion should be charged to the defendant. 257 Kan. at 563. We said: "[T]he time between the filing of the motion and the time set by the court for submission of briefs, provided this is not an unreasonable period of time, is properly chargeable to the

defendant." 257 Kan. at 564. In addition, the motion may be taken under advisement by the court for a reasonable amount of time, "*i.e.*, no longer than two to three weeks," and that time also is chargeable to the defendant. 257 Kan. at 564. Here, the record does not reflect any briefing schedule on the motions to suppress. Southard's counsel, although requesting a hearing on April 20, did not file his motions to suppress until June 9, 1994. Presumably, Southard's counsel needed the time before then to prepare the motion.

Southard contends that under *Downing*, time attributable to a defendant from defense motions is restricted to actual delay resulting from their pendency as distinguished from time elapsing while they are pending. We do not agree. Our effort in *Downing* was to apply a reasonableness requirement to ease the tension between the theory of the statute and the methods used by district courts to handle crowded dockets, and to measure delay by a standard of reasonableness where actual delay cannot be precisely determined. Thus, the K.S.A. 22-3402 phrase "unless the delay shall happen as a result of the application or fault of the defendant" was construed to include reasonable time for the parties to brief issues and for the court to decide them as part of the delay resulting from defendant's filing a motion. We extend the *Downing* rationale to the facts of this case. When defense counsel requested at the arraignment a 2-hour hearing for motions to suppress not yet filed, the time passing before the motions were filed is chargeable to the defendant. The court properly accommodated defense counsel's request, whether or not the defense ever followed through with filing or arguing the motion. The alternative would require a district court to refuse to accommodate a defendant by denying defense requests for hearing dates and set hearings only after a defense motion is on file. A non-accommodation policy does not support the interests of the defendant.

The district court concluded that defense counsel's statement at the time of arraignment that a motion hearing should be scheduled precluded starting the speedy trial clock's running against the State until disposition of defendant's motions. The fact no defense motion was filed when Lewis said, "I also got motions to suppress"

and asserted the need for 2 hours to dispose of the motions is not sufficient reason to shift the 28 days to the State. Defense counsel's eventual withdrawal of the motion to suppress, long after the hearing date was first requested, provides even less justification for such a shift. On April 20, 1994, Southard needed a 2-hour hearing; by June 16, 1994, he did not need a hearing at all.

*Downing* holds:

"When a defendant, as in this case, files a motion to suppress evidence, any delay caused by the filing of the motion is necessarily the result of the application of the defendant. Under a plain reading of the statute, a reasonable time taken by the parties and the court to process the defendant's motion to suppress should be charged to the defendant." 257 Kan. at 563.

We believe the 28 days between April 20 and May 18 should be charged to Southard.

## The Sufficiency of the Evidence

Southard was charged with rape, *i.e.*, committing the act of sexual intercourse with J.G., who did not consent and who was overcome by force or fear. Southard contends on appeal that the evidence was not sufficient to prove the element of force or fear. Conceding that the victim's testimony may suffice without corroboration, Southard argues that J.G.'s testimony was not clear and convincing.

Southard asks us to consider whether there were inconsistencies in J.G.'s accounts. At trial, Dr. Sheets testified that J.G. told her the intercourse hurt and that afterwards when walking or urinating she felt pain. Southard contends that J.G.'s testimony does not reveal that she was suffering any discomfort or disability afterwards. The testimony which Southard calls to our attention consists of questions and answers about what J.G. did after Southard left. Nowhere in her cross-examination was J.G. asked whether she felt any physical discomfort or pain. The absence of testimony about discomfort or pain, therefore, would not signify that she had not experienced it. There is no merit to the suggestion that comparing of Dr. Sheets' testimony with J.G.'s examination reveals inconsistencies in J.G.'s testimony.

Second, Southard contends that what J.G. told D.R. was inconsistent with J.G.'s trial testimony. D.R., who was 14 at the time of trial and was J.G.'s friend from church, testified as follows:

"[J.G.] said that she was babysitting at her neighbor, Rose's house, and that Bobby came over and then left and came back and raped her.

. . . .

". . . She said that when he came back he told her that he was going to show her the game that girls play. And he asked her to go to the bedroom with [him] and she didn't want to and she tried to run to the door, but he had locked it. And he held a knife to her and carried her to the bedroom and made her take off her clothes and raped her."

Southard contrasts J.G.'s account with D.R.'s; J.G. testified that Southard did not threaten her with the knife until he was kissing her in the bedroom and that he pulled off her clothes when she refused to undress.

The weak link in Southard's insufficiency argument is that he wants to show inconsistencies in J.G.'s accounts by contrasting her trial testimony with the trial testimony of another young girl. Both accounts support the elements of rape, whether Southard threatened J.G. with the knife before or after he took her into the bedroom, and whether J.G. was forced to take off her clothes or Southard pulled them off. The differences in the girls' testimony provide no basis for concluding that the victim's testimony was not credible. The determination of credibility is vested in the jury. Possibly, the brief account given by D.R. was understood to be just that, rather than a chronological account of the incident.

Southard contends that the discrepancies he has pointed out "open [J.G.'s] testimony to scrutiny by this court." He relies on *State v. Borthwick*, 255 Kan. 899, 880 P.2d 1261 (1994), and *State v. Matlock*, 233 Kan. 1, 660 P.2d 945 (1983). Neither case supports his argument. Here, a 12-year-old girl was raped in a neighbor's house by a male acquaintance who displayed a knife. Our affirmance of Borthwick's conviction of raping an adult highlights the weakness of Southard's argument.

### The Police Officer's Negative Answer

Southard complains of the prosecuting attorney asking a police

officer, "Did you believe the defendant's version of what happened over there?" The officer answered, "No, I don't." The complained-of question and answer were asked and answered on redirect examination. During cross-examination, defense counsel Lewis and the officer had the following exchange:

"Q. When Bobby came around to saying yes, you know, we did have sex, but it was consensual, it was during that first interview. You informed Bobby that you thought he was being truthful at that point; is that correct?

"A. I informed him that I thought we were making headway basically.

"Q. Do you recall testifying about this matter at an earlier hearing?

"A. Yes.

. . . .

"Q. Were you asked at that time what your response to Bobby saying yes, I had sex, but it was consensual?

"A. Yeah. I thought I told him that he was being truthful. That's part of it.

"Q. So you did tell him at that point that you thought he was being truthful?

"A. Yeah. One time. That's part of the technique."

The thrust of the cross-examination was that during the interview, the officer told Southard that he believed Southard's account was true. On redirect examination the prosecuting attorney asked the officer whether he believed Southard's account, and the officer denied believing it.

Southard argues: "[I]t can hardly be said that the defense opened the door to such an inquiry. The detective did not admit that he told Bobby he believed him, but simply indicated that he told him that they were making progress. There was, therefore, nothing for the State to properly rebut." Contrary to Southard's assertion, the officer did admit that he told Southard he believed him. The State's question was not objectionable.

Affirmed.

ALLEGRUCCI, J., dissenting: I dissent from the majority's holding that Southard's statutory right to a speedy trial was not violated. I disagree with the majority that the 28 days between arraignment on April 20 and May 18, the date the court scheduled for hearing motions, should be attributed to Southard.

In *City of Dodge City v. Downing*, 257 Kan. 561, 563, 894 P.2d 206 (1995), we held:

"When a defendant, as in this case, files a motion to suppress evidence, any delay caused by the filing of the motion is necessarily the result of the application of the defendant. Under a plain reading of the statute, a reasonable time taken by the parties and the court to process the defendant's motion to suppress should be charged to the defendant. This is the rule in Kansas as well as in many other jurisdictions."

We held the 16 days from the date defendant filed his motion until the date set for hearing the motion and the 14 days it took the court to rule on the motions were "delays which happened as a result of the application of the defendant." 257 Kan. at 565.

Here, Southard did not file his motion until June 9, some 3 weeks after the May 18 hearing date. In fact, the parties jointly requested that the May 18 hearing be continued to June 16. Southard withdrew his motion to suppress on June 16, and the only motion heard was the State's motion, which was taken under advisement by the court.

Southard did nothing to delay the trial. His motion to suppress was actually pending only 7 days out of the 57 days attributed to him on the basis of pending motions. In *Downing*, this court concluded that a reasonable amount of time for processing a defendant's motion should be charged to the defendant. That was the time between the filing of his motion and the time the motion was heard. It also included a reasonable time for the court to decide the motions. There was no showing in the present case that any time was attributable to briefing the defendant's motion or for the court to rule on the motion. In fact, the defendant's motion was never heard by the court.

Notwithstanding, the majority assesses the time to the defendant because on "April 20, 1994, Southard needed a 2-hour hearing; by June 16, 1994, he did not need a hearing at all." The irony of that rationale is that because the defendant might need 2 hours for a hearing, the 28 days between April 20 and May 18 is a delay resulting from the fault of the defendant. The majority opinion requires defense counsel to choose between advising the court of the intent to file a motion and a defendant's right to a speedy trial. The State, on the other hand, has no such problem in that the time is assessed to the State whether or not it advises the court. The State

has the added benefit that if the defendant requests a hearing, the State may then also do so, and the time will be assessed to the defendant. I find that to be unacceptable.

It is disingenuous for the majority to say that by extending "the *Downing* rationale to the facts of this case," Southard's right to speedy trial was not violated. *Downing* is not authority for the majority's opinion. The majority ignores rather than extends the *Downing* rationale. The majority's holding renders meaningless Southard's statutory right to a speedy trial and nullifies the State's responsibility to bring him to trial within 90 days.

I would hold that Southard's right to a speedy trial was violated and reverse the trial court.