(269 P.3d 862)
No. 104,817

STATE OF KANSAS, *Appellee*, v. DAVID M. BUTTS, *Appellant*.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■ Opinion
filed January 20, 2012. ■■■■■■

*Edward C. Gillette*, of Gillette Law Firm, P.A., of Mission, for appellant.

*Jennifer S. Tatum*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., BUSER, J., and KNUDSON, S.J.

BUSER, J.: David Butts appeals his convictions for possession of cocaine, in violation of K.S.A. 65-4160(a), and driving under the influence of alcohol (DUI), in violation of K.S.A. 8-1567. Butts raises two issues on appeal. First, he contends the district court committed reversible error when it denied his motion to suppress incriminating evidence seized during the traffic stop by the law enforcement officer. In particular, Butts argues the traffic stop was not justified by the officer's reasonable suspicion that he committed the traffic offense of speeding. Second, Butts contends the district court erred when it denied his motion to dismiss the information based on speedy trial grounds because the State failed to bring him to trial within 180 days of arraignment as required by K.S.A. 22-3402(2). We affirm the convictions.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 17, 2009, at about 2:48 a.m., Officer David Hopkins of the Kansas City, Kansas, Police Department stopped a Chevrolet Equinox for speeding and swerving within its lane of traffic. David Butts was driving and a passenger was in the front passenger seat. According to Officer Hopkins, he noticed Butts' vehicle by chance and he was unaware that other officers had observed Butts' vehicle at a known drug house earlier in the evening.

Officer Hopkins first noticed Butts' vehicle traveling at a speed of about 45 miles per hour in a 30-mile-per-hour speed zone. The officer's speed determination was an estimate based upon his observations, training, and experience with radar and speed detection. Unlike the more typical determinations of vehicle speed, Officer Hopkins' visual estimation was not confirmed by any speed measurement device, stopwatch, or pacing of the vehicle by the officer.

Officer Hopkins made a U-turn in order to follow Butts' vehicle. After observing it for 4 blocks, the officer noted the vehicle was swerving within its own lane of traffic which he believed constituted improper driving on a roadway. According to Officer Hopkins, "The reason I stopped the vehicle was that I saw . . . what I believed to be [two] traffic infractions [speeding and swerving within the lane of traffic] and decided at that time to conduct a stop due to the fact that [Butts] could have been a DUI stop."

After Officer Hopkins approached the vehicle, he noticed that Butts' eyes were bloodshot, his speech was slurred, and there was a "strong" odor of alcoholic beverages coming from him. Additionally, the officer observed Butts fumbling to get his license out of his wallet.

Accompanying Officer Hopkins was Officer Gabriel Torres who administered field sobriety tests to Butts. Butts stumbled as he exited his vehicle, and he used the car door to maintain his balance. When Officer Torres asked Butts if he had been drinking, Butts admitted he had consumed " 'two to three Long Islands.' " In Officer Torres' opinion, Butts failed the walk-and-turn test but passed the one-leg-stand test. Officer Torres arrested Butts for DUI.

During a search incident to the DUI arrest, Officer Torres discovered two baggies of crack cocaine in Butts' right front pocket. Later, Butts was administered a breathalyzer test. The results reflected a .141 alcohol concentration level which is above the legal limit. See K.S.A. 8-1567.

On March 17, 2009, Butts was charged with possession of cocaine and DUI. He subsequently filed a motion to suppress evidence, and on February 1, 2010, the district court held a suppression hearing. The district court took the matter under advisement and later asked the parties for additional briefing and argument. On April 30, 2010, the district court held another hearing to make factual findings and legal conclusions regarding the motion to suppress. The district court denied Butts' motion, concluding that the traffic stop was supported by reasonable suspicion of speeding, and Butts' subsequent arrest for DUI was supported by probable cause. The district court scheduled the jury trial for the first available date, May 10, 2010.

On May 9, 2010, Butts moved to dismiss the charges, alleging the State violated his constitutional and statutory rights to a speedy trial. The district court denied the motion. The next day, Butts waived his right to a jury trial. The parties submitted the case on stipulated facts, and the district court found Butts guilty as charged.

On August 4, 2010, Butts was sentenced to a controlling term of 11 months' incarceration but granted 18 months' probation after serving 48 hours in jail. He filed a timely appeal.

### VALIDITY OF THE TRAFFIC STOP

On appeal, Butts contends the stop of his vehicle was unlawful because it was not supported by reasonable suspicion that he was speeding or improperly weaving within the lane of traffic prior to the stop. Butts argues the traffic stop was based instead on a "fabrication by the police," and the real reason for the stop was to "initiate an investigatory detention in order to effectuate the possible discovery of contraband, despite a lack of probable cause to do so." Because the traffic stop resulted in the officers obtaining evidence of Butts' intoxication and seizure of cocaine from his pocket during the search incident to his arrest for DUI, Butts claims the district court erred in not suppressing the evidence as fruit of the poisonous tree. See *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *State v. Horn*, 278 Kan. 24, 31, 91 P.3d 517 (2004).

The State concedes that Officer Hopkins did not have reasonable suspicion to stop Butts for violating K.S.A. 8-1522(a) which provides: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." See *State v. Marx*, 289 Kan. 657, 215 P.3d 601 (2009). The State argues, however, that Officer Hopkins "was justified in stopping [Butts] based upon the speeding infraction alone."

The district court upheld the traffic stop because it found Officer Hopkins had reasonable suspicion to believe Butts had committed the traffic violation of driving in excess of the posted speed limit. Given this ruling, the State's concession, and the argument presented on appeal, the issue before this court is whether Officer

Hopkins' observation of Butts' vehicle, which resulted in his estimation that the vehicle was moving in excess of the posted speed limit, provided reasonable suspicion to stop Butts for speeding.

As a general rule:

"When reviewing a motion to suppress evidence, an appellate court reviews the factual underpinnings of a district court's decision for substantial competent evidence and the ultimate legal conclusion drawn from those facts de novo. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review. The State bears the burden to demonstrate that a challenged search or seizure was lawful." *State v. Walker*, 292 Kan. 1, Syl. ¶ 1, 251 P.3d 618 (2011).

We first review whether the district court's factual findings made at the hearing on the motion to suppress are supported by substantial competent evidence. See *Walker*, 292 Kan. at 5. The district court stated:

"Basically the court finds that Mr. Butts at one point in time was driving . . . northbound on 18th Street near Minnesota Avenue where [a] law enforcement officer observed his vehicle traveling at a rate of speed that the officers felt [was] speeding and officers felt that apparently going fast enough that they felt compelled to turn around and give chase. Mr. Butts pulled over his vehicle on 18th Street somewhere north of Washington Boulevard."

Based on these factual findings, the district court held "the law enforcement officers did have reasonable cause to stop Mr. Butts' vehicle."

On appeal, Butts first asserts that Officer Hopkins' allegations regarding the traffic violations were "a fabrication," and the audio portion of the DVD of the traffic stop proves the point. He asserts the DVD shows the alleged traffic violations were merely "after-the-fact, post-hoc justification[s]" for a baseless and unconstitutional pretextual investigatory detention. Specifically, Butts notes that following the traffic stop, unidentified officers were heard advising Officer Hopkins over the police radio that Butts' vehicle was observed at a drug house shortly before the stop.

The State counters that the evidence shows Officer Hopkins stopped the vehicle not for any pretextual reason but because Butts was speeding. In particular, the State highlights Officer Hopkins' testimony that he only became aware of the other officers' earlier

observation of Butts' vehicle at a known drug house *after* the vehicle was stopped.

Officer Hopkins' testimony was substantial competent evidence to support the district court's factual finding that the officer stopped Butts because he was speeding. The officer testified he observed Butts' vehicle traveling at an estimated speed of 45 miles per hour in a 30-mile-per-hour speed zone. At the bench trial, Butts stipulated that "Officer Hopkins stopped the vehicle based upon . . . speeding at 45 m.p.h. in a 30 m.p.h. zone."

On the other hand, there is no evidence in the record to support Butts' assertion that Officer Hopkins stopped the vehicle as a ruse to investigate possible drug activity. Even if this were not the case, " '[a] traffic violation provides an objectively valid reason to effectuate a traffic stop, [though] the stop is pretextual. [Citations omitted.]' [Citation omitted.]" *State v. Moore*, 283 Kan. 344, 350, 154 P.3d 1 (2007); see *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996).

Next, Butts contends that Officer Hopkins' "personal observation" that Butts was speeding, "without any form of scientific measurement or standard of comparison," could not provide the sole basis for the district court's conclusion that the officer had reasonable suspicion to believe Butts was speeding.

The State counters that Kansas law provides "[t]he personal observation of an officer regarding the speed of a vehicle can provide a solid basis for reasonable suspicion, justifying the detention of a vehicle." In the present case, the State emphasizes, "Officer Hopkins testified that he was not able to use radar or pacing on the night in question, but relied upon his over three years experience and training in radar and speed detection in order to determine that [Butts] was travelling over the posted speed limit."

A traffic stop is a seizure under the Fourth Amendment to the United States Constitution. *State v. Fitzgerald*, 286 Kan. 1124, 1127, 192 P.3d 171 (2008). It is well-established that a law enforcement officer may conduct a lawful traffic stop provided the officer has " '"a reasonable and articulable suspicion, based on fact, that the person stopped has committed, is committing, or is about to commit a crime." [Citation omitted.]' [Citations omitted.]" *State v.*

*Thompson*, 284 Kan. 763, 773, 166 P.3d 1015 (2007); K.S.A. 22-2402(1).

"Whether reasonable suspicion exists is a question of law. An appellate court applies a mixed question standard of review: whether substantial competent evidence supports the district court findings, while the legal conclusion is reviewed de novo." *Walker*, 292 Kan. 1, Syl. ¶ 5.

When reviewing an officer's belief of reasonable suspicion, appellate courts must determine whether the traffic stop is justified by the totality of the circumstances. As explained by our Supreme Court:

"In reviewing an officer's belief of reasonable suspicion, an appellate court determines whether the totality of the circumstances justifies the detention. The court makes its determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, remembering that reasonable suspicion represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence. However, the officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Walker*, 292 Kan. 1, Syl. ¶ 6.

In the context of this case, we must first determine whether a law enforcement officer's observation of a moving vehicle which results in the officer's estimation that the vehicle is moving in excess of the posted speed limit may constitute reasonable suspicion that the driver is speeding. Our review of Kansas caselaw did not yield a published opinion that is dispositive of this particular question under the unique facts of this case.

In support of its argument, the State cites two published opinions, *State v. Guy*, 242 Kan. 840, 752 P.2d 119 (1988), and *State v. Whitehurst*, 13 Kan. App. 2d 411, 772 P.2d 1251 (1988), *rev. denied* 244 Kan. 740 (1989).

In *Guy*, law enforcement officers stopped the defendants' Cadillac to investigate suspicious drug-related activity observed over the course of 4 hours of surveillance. Shortly before the traffic stop, Detective Don Poore followed the Cadillac in his personal vehicle while it was traveling on Interstate 70 at more than 100 miles per hour. Although the Cadillac's speed was not measured by any de-

vice, the detective (who was not a traffic officer) testified the Cadillac was moving at about the same speed as his vehicle. As a result of the traffic stop, vehicle search, and seizure of contraband, Guy was charged with assorted drug offenses. Guy sought suppression of the evidence and dismissal of the charges, alleging the traffic stop was illegal because the detective did not have reasonable suspicion that he had committed any offenses.

As summarized by our Supreme Court,

"[t]he trial judge found that the officers stopped the car not for speeding but for investigation, and to identify the occupants. He pointed out that no accurate speed measurement was made, and that there was merely an estimate of the speed on the part of Officer Poore; but the judge said, 'I have no doubt that these defendants were exceeding the speed limit.' He concluded that the defendants were not stopped for speeding, and the officers could articulate no basis for reasonably suspecting that the defendants were committing, had committed, or were about to commit a crime as required by the statute. Therefore, the court suppressed the evidence." *Guy*, 242 Kan. at 842.

Although the Supreme Court agreed that Detective Poore did not have a reasonable basis to stop the defendants for drug-related crimes, it held the speeding violation, by itself, was sufficient to justify the stop. 242 Kan. at 842-44. The Supreme Court explained:

"The trial court observed that Detective Poore made no accurate speed measurement. Radar was not utilized here, as it is in most highway speeding cases. However, the utilization of a private car's speedometer *plus the estimate of an experienced officer* has been held to be sufficient evidence to support a speeding conviction. See 7A Am. Jur. 2d, Automobiles and Highway Traffic § 371 and cases cited therein. Here, the observation by the officer of speed grossly exceeding the lawful limit was sufficient to cause him to reasonably conclude that the driver of the Cadillac was committing a traffic offense, and thus the stop was lawful." (Emphasis added.) 242 Kan. at 844.

The syllabus preceding the *Guy* opinion stated the following rule of law: "A law enforcement officer who observes a motor car exceeding the speed limit has authority to stop that vehicle." 242 Kan. 840, Syl.

Similarly, in *Whitehurst*, our court held that a law enforcement officer may make an investigative stop of a vehicle based, in part, on the officer's visual estimation the vehicle was speeding. In that case, Officer Hendrickson observed Whitehurst's vehicle stop at a

stop sign, continue forward for approximately 50 yards, come to a stop, back up past the same stop sign, and abruptly accelerate forward causing the tires on the vehicle to "squeal, spin, and throw gravel." 13 Kan. App. 2d at 413. Officer Hendrickson believed Whitehurst committed the traffic violations of speeding and reckless driving, so he stopped the vehicle. Citing *Guy*, our court upheld the validity of the traffic stop based on the officer's reasonable suspicion of two traffic violations. *Whitehurst*, 13 Kan. App. 2d at 413.

Butts responds that *Guy* and *Whitehurst* are not entirely on point. In *Guy*, the officer's visual estimation of the vehicle's speed was corroborated by his own vehicle's speedometer and pacing of the suspect vehicle. In *Whitehurst*, in addition to the officer's reasonable suspicion of speeding based on observation alone, there was also evidence of reckless driving. In the present case, however, Butts emphasizes there was no corroboration of the officer's visual estimation of speeding and no additional traffic violation.

Three unpublished opinions of our court provide guidance in applying *Guy* and *Whitehurst* to the facts of the present case. First, in *City of Prairie Village v. Starkweather*, No. 102,461, unpublished opinion filed September 24, 2010, Officer Joel Porter testified his attention was drawn towards Starkweather's vehicle because it " 'appeared . . . that it was travelling at a high rate of speed.' " Slip op. at 2. Officer Porter also thought he saw Starkweather make a lane change without signaling which caused him to make the traffic stop. The district court discounted evidence about the improper lane change but upheld the traffic stop solely based on the officer's visual estimation of the speeding violation: " 'The officer has clearly said that "[t]he vehicle was traveling . . . at a high rate of speed in a 35 mile per hour zone." ' . . . 'That's enough to pull a car over on.' " Slip op. at 6.

Our Court of Appeals agreed with the district court. In upholding the validity of the traffic stop, we observed:

"*Whitehurst* and *Guy* indicate that the personal observation of an officer regarding the speed of a vehicle can provide a solid basis for reasonable suspicion, justifying the detention of a vehicle. Here, Officer Porter observed Starkweather

driving at a high rate of speed. This was based upon what 'appeared' to Porter." Slip op. at 5.

In *State v. Steele*, No. 101,250, unpublished opinion filed October 23, 2009, our court again held that a law enforcement officer's observation was sufficient to establish reasonable suspicion to stop a vehicle for speeding. In *Steele*, Officer Tim Greenwood heard "a very loud roaring sound" coming from Steele's vehicle as it was approaching an intersection. Slip op. at 2. Officer Greenwood believed the vehicle was speeding, and he estimated that Steele was traveling about 40 miles per hour in an area with a posted speed limit of 20 miles per hour. Additionally, the officer observed Steele slam on his brakes to stop at a red light, which caused the front end of his vehicle to dip downwards and come to a stop past the crosswalk. Officer Greenwood stopped Steele's vehicle for speeding and disobeying a traffic signal. In considering these facts, our court cited *Guy* and upheld the validity of the traffic stop:

"[T]he record contains substantial competent evidence to support the trial court's finding that the initial stop of Steele's SUV was supported by reasonable suspicion that Steele had committed traffic violations. The evidence produced at the suppression hearing established that Greenwood had observed Steele traveling at an excessive rate of speed. As Steele was approaching the intersection, Greenwood heard a loud engine roar and also saw Steele's SUV dip forward as Steele slammed on the brakes. Although radar was not utilized by Greenwood to determine Steele's actual speed, Greenwood in his training and experience estimated that Steele was traveling 20 miles per hour over the posted speed limit. . . . Although Greenwood's estimation of speed alone might not have been enough to convict Steele for traveling at a certain rate of speed, Greenwood's observations certainly established *reasonable suspicion* that Steele was speeding." Slip op. at 7.

Finally, in *State v. Sanborn*, No. 102,958, unpublished opinion filed August 19, 2011, Deputy Darren Campbell, a 15-year veteran of the Reno County Sheriff's Department, saw Sanborn's vehicle pass another car at what he believed was a high rate of speed. Campbell's estimation of the speed of Sanborn's vehicle was "based upon his observation and his extensive experience in law enforcement." Slip op. at 2. The traffic stop ultimately led to Sanborn's arrest for DUI.

On appeal, Sanborn contended the officer did not have reasonable suspicion to stop his vehicle because Deputy Campbell did not pace his car and did not measure its speed with radar. In upholding the constitutionality of the traffic stop, a panel of this court cited *Guy* and found:

"Whether Sanborn was speeding is an issue of fact for resolution by the trial court. The district court heard and found credible Campbell's testimony that he observed Sanborn operating his automobile in excess of the posted speed limit. Campbell reached this conclusion based upon his observation of Sanborn's car and his 15 years' experience in law enforcement. This testimony was received without a contemporaneous objection. The trial judge found this testimony credible. We defer to the trial judge on the credibility of Campbell's testimony. . . . Having found credible the testimony that Sanborn was speeding, the district court did not err in concluding that Campbell had a legitimate basis to stop Sanborn for this traffic infraction." Slip op. at 4.

None of these published or unpublished Kansas cases support Butts' contention that a law enforcement officer's visual estimation of a vehicle's speed "without any form of scientific measurement or standard of comparison" is an insufficient basis upon which to formulate a reasonable suspicion of speeding. While the use of a speed measurement device, stopwatch, or pacing of the suspect vehicle may substantiate an officer's visual estimation, Kansas appellate courts have never required such evidence as part of an officer's determination of reasonable suspicion that a driver is traveling in violation of the posted speed limit.

We conclude that a law enforcement officer's observation of a moving vehicle which results in the officer's estimation that the vehicle is moving in excess of the posted speed limit may constitute, under the totality of the circumstances, reasonable suspicion that the driver is speeding in violation of law. Several reasons support our conclusion of law.

In our view, *Guy* stands for the general legal proposition: "A law enforcement officer who observes a motor car exceeding the speed limit has authority to stop that vehicle." 242 Kan. 840, Syl. *Guy's* progeny, *Whitehurst, Starkweather, Steele,* and *Sanborn,* underscores that an officer's visual estimation of speed alone—without reference to a speed measurement device, stopwatch, or pacing—

may provide the basis for an officer's reasonable suspicion that a driver is speeding.

Our Supreme Court has long recognized the admissibility of lay opinion testimony regarding vehicle speed based on observation alone. See *Hampton v. State Highway Commission*, 209 Kan. 565, 583, 498 P.2d 236 (1972) ("[W]e long ago recognized that lay opinions on the observed speed of an automobile are proper. [Citation omitted.] We think this is a subject fairly within the statute, K.S.A. 60-456, authorizing non-expert opinion evidence where it is 'rationally based on the perception of the witness' and is 'helpful to a clearer understanding of his testimony.' "); *Miller v. Jenness*, 84 Kan. 608, Syl., 611, 114 Pac. 1052 (1911) ("The rate of speed of an automobile on a public highway is a matter of which the people generally in this country have some knowledge. It is not a matter exclusively of expert knowledge or skill. Where the rate of speed of such a vehicle is material in an action, any person of ordinary ability and means of observation who may have observed the vehicle may give his [or her] estimate as to the rate of speed at which it was moving.").

Moreover, law enforcement officers who are properly trained or experienced in speed estimation may render opinions or inferences as experts under K.S.A. 60-456(b):

"If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness."

The Tenth Circuit Court of Appeals and several states have reached the same conclusion regarding this issue. See *United States v. Ludwig*, 641 F.3d 1243, 1247 (10th Cir. 2011) ("It's long been the case that an officer's visual estimation can supply probable cause to support a traffic stop for speeding in appropriate circumstances."); *State v. Allen*, 978 So. 2d 254, 256 (Fla. Dist. App. 2008) (After noting that "[o]ther states have also concluded that an officer's observations of a vehicle may provide reasonable suspicion that the vehicle is speeding," the court held the detective's observations of the defendant's speed were sufficient to establish prob-

able cause to stop the vehicle for the traffic infraction.); *State v. Barnhill*, 166 N.C. App. 228, 232-33, 601 S.E.2d 215 (2004) ("We find it relevant that if an ordinary citizen can estimate the speed of a vehicle, so can Officer Malone. Furthermore, it is not necessary that an officer have specialized training to be able to visually estimate the speed of a vehicle. Excessive speed of a vehicle may be established by a law enforcement officer's opinion as to the vehicle's speed after observing it.").

We next consider whether, under the totality of the circumstances in the present case, there was substantial competent evidence to support the district court's factual finding that Officer Hopkins had reasonable suspicion to believe that Butts was speeding.

Substantial competent evidence is evidence possessing both relevance and substance that a reasonable person could accept as being adequate to support a conclusion. *State v. Walker*, 283 Kan. 587, 594-95, 153 P.3d 1257 (2007). When reviewing factual findings, we do not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. *State v. Fewell*, 286 Kan. 370, Syl. ¶ 2, 184 P.3d 903 (2008); *State v. Diaz-Ruiz*, 42 Kan. App. 2d 325, 329, 211 P.3d 836 (2009).

Our review of the record of the suppression hearing shows the evidence regarding Officer Hopkins' speed estimation was uncontroverted. Officer Hopkins had been a law enforcement officer for "[a] little over three years." The officer testified he made his speed estimation as Butts' vehicle was traveling on the same street but in the opposite direction of his patrol vehicle. In short, Officer Hopkins had a close view of the vehicle at the time he made his estimation. The posted speed limit was 30 miles per hour. Officer Hopkins testified that he estimated Butts' vehicle was traveling at 45 miles per hour—15 miles per hour more than the posted speed limit. We view Butts' estimated vehicle speed as significantly higher than the posted speed limit and, as a result, a difference that would be discernable to an observant and trained law enforcement officer. With regard to his speed estimation, Officer Hopkins testified it was based on "training radar and speed detection," which is certainly a staple of law enforcement training and experience. More-

over, in applying the totality of circumstances inquiry we have been instructed:

"[T]he court should consider the totality of the circumstances and the fact that trained law enforcement officers are permitted to make 'inferences and deductions that might well elude an untrained person.' *United States v. Cortez*, 449 U.S. 411, 418, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981). See *State v. Kvam*, 336 N.W.2d 525, 528 (Minn.1983)." *State v. Field*, 252 Kan. 657, 660, 847 P.2d 1280 (1993).

We are persuaded the district court's factual findings were supported by substantial competent evidence and, given the totality of the circumstances, the district court did not err in concluding, as a matter of law, that Officer Hopkins had reasonable suspicion to believe that Butts was traveling in violation of the posted speed limit. As a result, Officer Hopkins conducted a valid traffic stop, and the district court did not err in denying Butts' motion to suppress evidence seized during the traffic stop.

## SPEEDY TRIAL

Butts contends the district court committed reversible error when it denied his motion to dismiss the charges based on violation of his statutory speedy trial rights. Specifically, Butts complains that the State failed to bring him to trial within 180 days of his arraignment as required by K.S.A. 22-3402(2). Our analysis of this speedy trial claim necessitates a brief summary of relevant dates.

Butts was charged on March 17, 2009. Upon his arrest, he promptly posted a surety bond. After a preliminary hearing, Butts was arraigned on August 25, 2009. On October 30, 2009, Butts filed a motion to suppress evidence. An evidentiary hearing on the motion, scheduled for December 11, 2009, was continued due to the unavailability of a State's witness. The State filed a written response to the motion on January 29, 2010.

On February 1, 2010, the district court heard evidence and argument about the traffic stop, DUI investigation, search incident to arrest, and seizure of the cocaine. The district court took the matter under advisement to review two DVDs, one of the traffic stop and the other of Butts in the police department's "Intoxilyzer room." The district judge advised the parties, "I will let you know a decision within 48 hours unless somebody wants to give me some-

thing else in writing." About 2 weeks later, on February 12, 2010, the district court asked the parties for further briefing and argument. In response, on April 19, 2010, Butts filed a "Supplement to the Motion to Suppress."

On April 30, 2010—some 3 months after the initial suppression hearing—the district court held another hearing to make factual findings and legal conclusions regarding the motion to suppress. The district court denied Butts' motion, concluding the traffic stop was supported by reasonable suspicion of speeding, and Butts' subsequent arrest for DUI was supported by probable cause. The district court scheduled the jury trial for the first available date, May 10, 2010.

On May 9, 2010—the day before the scheduled jury trial—Butts moved to dismiss the charges, alleging the State had violated his constitutional and statutory rights to a speedy trial. The district court denied Butts' motion, stating that it was necessary to take the motion to suppress under advisement, "given the nature of [the dash cam DVD of the traffic stop and arrest] and the issues that were involved in terms of search and seizures, stopping, whether it was a legitimate stop." Ultimately, the district court found that 21 days was a reasonable time period to take the motion under advisement and assessed that time against Butts. Given this assessment of time, the district court ruled that Butts was brought to trial within 180 days of his arraignment in compliance with K.S.A. 22-3402(2). The next day, Butts waived his right to a jury trial and was found guilty as charged upon stipulated facts.

Preliminarily, Butts mentions his constitutional speedy trial rights only in passing and provides no analysis necessary to establish a constitutional violation. See *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). This is important because a point raised incidentally in a brief and not argued therein is deemed waived and abandoned on appeal. See *State v. McCaslin*, 291 Kan. 697, 709, 245 P.3d 1030 (2011). As a result, we will only review whether Butts' statutory speedy trial rights were violated.

Our standard of review is as follows:

"Appellate courts exercise unlimited review over a district court's legal rulings regarding violations of a defendant's statutory right to a speedy trial. When the

assessment of time under the speedy trial statute turns on a factual determination by the district court, however, an appellate court must determine whether the facts as found by the district court are supported by substantial competent evidence. The court then determines de novo whether those facts as a matter of law support the legal conclusion of the district court." *State v. Vaughn,* 288 Kan. 140, Syl. ¶ 1, 200 P.3d 446 (2009).

When, as in this case, the defendant is arraigned and held to answer on an appearance bond, K.S.A. 22-3402(2) governs the statutory right to a speedy trial. It provides in pertinent part:

"(2) If any person charged with a crime and held to answer on an appearance bond shall not be brought to trial within 180 days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (5)."

"A defendant is not required to take any affirmative action to see that his or her right to a speedy trial is observed. [Citation omitted.]" *Vaughn,* 288 Kan. at 144. However, when a trial is delayed "as a result of the application or fault of the defendant" the speedy trial clock is tolled. K.S.A. 22-3402(2); *Vaughn,* 288 Kan. at 144.

Butts was brought to trial 258 days after his arraignment. He concedes that 75 of those days were properly assessed against him, thus tolling the speedy trial clock. Butts asserts, however, the remaining 183 days—3 days in excess of the statutory limit—should be assessed against the State. Of those 183 days, the parties agree their dispute is over the 98 days between the initial suppression hearing and trial—from February 2, 2010, to May 10, 2010.

Butts claims the entire 98-day time period should be assessed against the State. In particular, he argues that 88 days of that time period is properly chargeable to the State for purposes of K.S.A. 22-3402(2) because the delay was caused solely by the district court taking the motion to suppress under advisement. Moreover, Butts notes that he filed his motion 66 days after arraignment which he argues was early in the speedy trial period. Given this fact and the delay caused by the State's request for a continuance of the evi-

dentiary hearing, Butts believes any assessment of the 98 days against him is unreasonable under the circumstances.

On the other hand:

"The State denies that all of [the] time between February 1, 2010 and May 10, 2010 should be assessed against the State. Although the State concedes that the amount of time that it took the trial judge to resolve the motion to suppress was unreasonable, a reasonable amount of time should be assessed against the defendant."

The State contends the district court's assessment of "21 to 30 days" was "a reasonable period of time in which to render a decision based upon the evidence and arguments of law presented in the case." The State suggests: "At the very least, a period of three days, which would put the defendant within the mandated 180 day speedy trial period, should be assessed against the defendant."

Actions which toll the speedy trial clock include a defendant's request for a continuance, the filing of a motion that causes delay, or the defendant's active acquiescence to a continuance requested by the State. *Vaughn*, 288 Kan. at 144-45.

Our Supreme Court, under a plain reading of K.S.A. 22-3402, has stated that any delay caused by the filing of a motion to suppress is "necessarily the result of the application of the defendant." *City of Dodge City v. Downing*, 257 Kan. 561, 563, 894 P.2d 206 (1995). A reasonable period of time is charged against the defendant for the time taken by the parties and the court to process the motion. 257 Kan. 561, Syl. ¶ 2. However, judicial or prosecutorial procrastination is not considered the fault of the defendant because "any party filing a motion has a right to assume that it will be acted upon expeditiously. [Citation omitted.]" 257 Kan. at 564. Thus, only a reasonable period of time was properly assessable against Butts for deciding the motion to suppress.

Butts' argument presumes the entire 98-day period from the initial suppression hearing until the bench trial was the result of judicial or prosecutorial procrastination. Given the circumstances of this case, Kansas law provides otherwise.

In *State v. Southard*, 261 Kan. 744, 749, 933 P.2d 730 (1997), our Supreme Court reaffirmed the holding in *Downing* and explained:

"Southard contends that under *Downing,* time attributable to a defendant from defense motions is restricted to actual delay resulting from their pendency as distinguished from time elapsing while they are pending. We do not agree. Our effort in *Downing* was to apply a reasonableness requirement to ease the tension between the theory of the statute and the methods used by district courts to handle crowded dockets, and to measure delay by a standard of reasonableness where actual delay cannot be precisely determined. Thus, the K.S.A. 22-3402 phrase 'unless the delay shall happen as a result of the application or fault of the defendant' was construed to include reasonable time for the parties to brief issues *and for the court to decide them as part of the delay resulting from defendant's filing a motion.*" (Emphasis added.)

Additionally, in *Southard,* the court held: "[T]he motion may be taken under advisement by the court for a reasonable amount of time, *'i.e., no longer than two to three weeks,'* and that time also is chargeable to the defendant. [Citation omitted.]" (Emphasis added.) 261 Kan. at 749.

We are convinced the district court did not err in ruling that Butts' speedy trial rights were not violated. First, as discussed earlier, one part of the suppression motion involved the validity of the traffic stop under the unique factual circumstance wherein Officer Hopkins stopped Butts based on his estimation of vehicle speed without reference to any speed measurement device, stopwatch, or pacing. These facts presented a rather novel legal and factual issue.

Second, the district court needed time to view the DVD of the traffic stop which was admitted into evidence at the initial hearing but not played in the courtroom. As the judge explained,

"I would simply tell the parties that it was a very close call so far as the court was concerned and I had to review that DVD a number of times. And one of the problems with reviewing that DVD was its length. It was more than an hour in length."

Third, the district court requested additional argument and briefing after the initial hearing in order to facilitate a proper ruling on the motion. Not only does this request show the district court's serious and thorough approach to ruling on the motion, it also benefitted Butts by enabling him to present additional briefing in support of his motion.

Under these circumstances, we find the district court's assessment of 21 days of speedy trial time against Butts while the motion was under advisement was supported by substantial competent evidence, and those facts supported the legal conclusion of the district court that Butts was tried within the 180-day time period mandated by K.S.A. 22-3402(2). See *Vaughn*, 288 Kan. 140, Syl. ¶ 1.

Finally, given our holding, it is unnecessary for us to decide whether the 3 judicial furlough days which arose during the litigation should have been assessed against the State or Butts. See *State v. Bennett*, 288 Kan. 86, 89, 200 P.3d 455 (2009) (appellate courts do not decide moot issues).

Affirmed.